## Bard Building Supply Co., Inc. d/b/a Bard Home Decorating Center v. United Foam Corporation

[400 A.2d 1023]

No. 229-78

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed April 3, 1979

126

*Anthony B. Lamb* of *Paul, Frank & Collins, Inc.,* Burlington, for Plaintiff.

*Brooke Pearson* of *Gravel, Shea & Wright,* Burlington, for Defendant.

**Larrow, J.** Bard, a Vermont corporation, brought suit against defendant United, a foreign corporation, seeking

damages for claimed defects in the flame retardant characteristics of a shipment of foam. It perfected service under 12 V.S.A. §§ 855, 856, by service upon the Secretary of State and subsequent forwarding of the process and return by registered mail to the defendant. The validity of that service is the subject matter of this appeal, since the trial court dismissed the amended complaint upon defendant's motion, for want of jurisdiction.

■ The issue presented is clearly defined. Plaintiff contacted the defendant in Pennsylvania about the order in question, by phone. Defendant did not solicit this, or any other business in Vermont. It did no business here, either directly or through distributors. It accepted plaintiff's order, however, and shipped the goods in question C.O.D. to plaintiff in Vermont. The claim is for damages resulting from defects in the material, and jurisdiction is based upon the single act described. The trial court considered this an insufficient "minimum contact" with the jurisdiction under *Kulko* v. *Superior Court*, 436 U.S. 84 (1978). We disagree and reverse.

■ By its terms, 12 V.S.A. § 855 expresses a policy to assert jurisdiction over foreign corporations to the full extent permitted by the Due Process Clause of the Fourteenth Amendment. *Deveny* v. *Rheem Manufacturing Co.*, 319 F.2d 124 (2d Cir. 1963); Reporter's Notes, V.R.C.P. 4. The issue, therefore, is one of federal constitutional law, and the basic test had its origin in *International Shoe Co.* v. *Washington*, 326 U.S. 310 (1945). Under *International Shoe* the validity of the service here depends upon whether the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316. Such minimum contacts were found to exist in *McGee* v. *International Life Insurance Co.*, 355 U.S. 220 (1957), a single transaction case, where defendant offered, by mail, to reinsure the decedent, who accepted and paid premiums by mail to defendant's out-of-state office. A "substantial connection" was found to exist with the forum state. *Id.* at 223. Such contacts were found too tenuous, however, in *Hanson* v. *Denckla*, 357 U.S. 235 (1958), where Florida attempted to assert jurisdiction over Delaware

trustees of an inter vivos trust set up by a Pennsylvania resident who exercised powers of appointment over the trust, after she set up a new domicile in Florida, and later died there. And, as the trial court noted, they were held too tenuous in *Kulko, supra,* to sustain California in personam jurisdiction over a party to a divorce who permitted children in his custody to join their mother who had moved to California.

■ But *Kulko* does not control the decision in this case. As the Court pointed out, there is a wide difference between merely sending a child into a state and actively doing business in that state.

> But the mere act of sending a child to California to live with her mother *is not a commercial act* and connotes no intent to obtain or expectancy of receiving a corresponding benefit in the State that would make fair the assertion of that State's judicial jurisdiction.

*Kulko, supra,* 436 U.S. at 101. (Emphasis added.) The *Hanson* case also points out that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and prohibitions of its laws." *Hanson, supra,* 357 U.S. at 253. Here, in contrast to *Hanson* and *Kulko,* we have a purposeful commercial act by the defendant, the sending of the C.O.D. shipment into Vermont. Collection of the purchase price in Vermont was certainly a prime element of the defendant's intent; by this manner of shipment it made the carrier its agent for delivering the goods and collecting the price. *State* v. *O'Neil,* 58 Vt. 140, 157–61, 2 A. 586, 589–91 (1885); *appeal dismissed,* 144 U.S. 323 (1892); *Cermetek, Inc.* v. *Butler Avpak, Inc.,* 573 F.2d 1370, 1375 (9th Cir. 1978). And see *Vemco Plating Co.* v. *Denver Fire Clay Co.,* 496 P.2d 117 (Okla. 1972), upholding § 1.03(a)(2) of the Uniform Interstate and International Procedure Act, conferring personal jurisdiction with respect to a claim arising from contracting to supply services or things within the state. Contra, *Droukas* v. *Divers Training Academy, Inc.,* 376 N.E.2d 548 (Mass. 1978) (shipment C.O.D. as to shipping charges only).

Although the case involves a tort rather than a contract, we have previously upheld jurisdiction based upon a single act within the state. We noted that foreign corporations need not act within this state unless they choose to. *Smyth* v. *Twin State Improvement Corp.*, 116 Vt. 569, 80 A.2d 664 (1951).[1] And we see no reason why more substantial contacts should be required to support jurisdiction in contract matters than in tort. *Vencedor Manufacturing Co.* v. *Gougler Industries, Inc.*, 557 F.2d 886, 893-94 (1st Cir. 1977).

■■ We have used varying terminology in our cases to describe what we consider the essential element for exercise of jurisdiction, the extent of participation in the Vermont market that will satisfy the elements of "fair play and substantial justice." In what is perhaps our leading case, *O'Brien* v. *Comstock Foods, Inc.*, 123 Vt. 461, 194 A.2d 568 (1963), we spoke of active and intentional participation in the Vermont market, either through direct shipment or by transmittal through regular distributors serving the area. We there required that product use and consumption in Vermont be substantial, but only where evidence of direct shipment, unlike the instant case, was missing, and knowing participation had to be inferred. In *Huey* v. *Bates*, 135 Vt. 160, 375 A.2d 987 (1977), we required a "clear intention to actively participate in the Vermont market." *Id.* at 163, 375 A.2d at 990. And more recently, in *Pasquale* v. *Genovese*, 136 Vt. 417, 392 A.2d 395 (1978), we spoke of intentional and affirmative action by the nonresident defendant as the key to personal jurisdiction. All of these criteria are met in the instant case. The shipment was direct, it was intentional, and its form required, and received, action in Vermont by the carrier as defendant's agent. The required minimum contacts for jurisdiction to support an in personam judgment in Vermont are

---

[1] The *Smyth* case was referred to with apparent approval in *McGee. McGee* v. *International Life Ins. Co.*, *supra*, 355 U.S. at 223 (n.2). The same footnote also cited *Compania de Astral, S.A.* v. *Boston Metals Co.*, 205 Md. 237, 107 A.2d 357 (1954), *cert. denied,* 348 U.S. 943 (1955), which upheld a statute predicating jurisdiction on the making of a single contract.

present. Since compliance with the procedural requirements of the statutes involved is not questioned, reversal is required.

*The order dismissing plaintiff's complaint is reversed, and the cause remanded.*