## Northern Aircraft, Inc. v. William O. Reed, M.D.

[572 A.2d 1382]

No. 89-259

Present: Allen, C.J., Peck and Dooley, JJ., and Barney, C.J. (Ret.) and Springer, D.J. (Ret.), Specially Assigned

Opinion Filed March 2, 1990

38

*Peter S. Sidel* and *Diana Pikulski* of *Sidel & Associates,* Waitsfield, for Plaintiff-Appellee.

*Stephen J. Soule* of *Paul, Frank & Collins, Inc.,* Burlington, and *Stephen J. Dennis* of *Niewald, Waldeck, Norris & Brown,* Overland Park, Kansas, for Defendant-Appellant.

**Dooley, J.** The superior court granted plaintiff's motion for summary judgment, holding that plaintiff was entitled to a sales commission on the sale of defendant's aircraft. Defendant appeals, claiming two errors: (1) the trial court could not render a valid judgment because it lacked personal jurisdiction over him;

and (2) summary judgment was improper as there were genuine issues of material fact. We affirm.

In March of 1986, defendant, Dr. William O. Reed, a resident of Kansas, telephoned James Campbell, president of plaintiff Northern Aircraft, Inc., a Vermont corporation, and requested his assistance in selling an aircraft owned by defendant. After the initial telephone call, plaintiff mailed an Aircraft Listing Agreement to defendant, which he executed and returned on March 27, 1986. The agreement made plaintiff the exclusive sales agent for a minimum period of ninety days and authorized it to sell the aircraft for a price of $194,000 or for a lesser amount with defendant's permission. Additionally, the agreement stated that defendant agreed: "To cooperate fully with agent and refer any inquires to him; . . . to conduct all negotiations through him; to pay agent a brokerage commission of 5% of selling price in the event agent produces a purchaser ready, willing and able to buy the aircraft, on the terms herein provided." Under the terms of the contract, plaintiff was also entitled to a commission "if an agreement to sell the aircraft is executed by owner and purchaser through . . . efforts of the . . . owner . . . during the period of this agreement."

Prior to signing the listing agreement, defendant had received an offer of $175,000 for the aircraft. This offer was still open at the time defendant signed the agreement. After signing the agreement, defendant became concerned with plaintiff's progress and called plaintiff's president by telephone on several occasions, but the calls went unanswered. Approximately one month after defendant signed the agreement, he accepted the outstanding $175,000 offer and notified plaintiff on April 26, 1986 that he had sold his aircraft. Defendant did not pay plaintiff a commission after he sold the aircraft.

On February 29, 1988, plaintiff filed suit in Chittenden Superior Court for five percent of the sale amount alleging breach of contract. Defendant moved to dismiss for lack of personal jurisdiction but that motion was denied. On November 18, 1988, plaintiff moved for summary judgment relying on the contract and two affidavits defendant had submitted with his motion to dismiss. When defendant failed to respond, the court granted

plaintiff's motion for summary judgment on January 6, 1989. An attempt by defendant to persuade the court to reconsider failed, and defendant appealed to this Court.

Defendant's first claim of error on appeal is that the Vermont courts lack personal jurisdiction over him. In his affidavits, defendant stated that he had never traveled to Vermont and his only contact with plaintiff had been by telephone and through the mail. Further, he stated that he owned no property in Vermont and that the aircraft itself had been at all times located in Kansas. Based on these facts, defendant argued that he does not have sufficient minimum contacts with Vermont and requiring him to defend himself in this state would be unreasonable.

■ While defendant is correct that his contact with Vermont was limited, this fact alone does not defeat jurisdiction. It is not the quantity of contacts with the forum state that give rise to personal jurisdiction, but rather, the nature and quality of defendant's activities. For the reasons discussed below, we find that defendant's contact with Vermont was sufficient.

■■ Before a nonresident defendant can be brought into a Vermont court, the plaintiff must show that the Vermont long arm statute reaches the defendant, and that jurisdiction over him may be maintained without offending the Due Process Clause of the Fourteenth Amendment of the United States Constitution. The Vermont long arm statute, 12 V.S.A. § 913(b), states:

> (b) Upon the service [of process on a party outside the state], and if it appears that the contact with the state by the party or the activity in the state by the party or the contact or activity imputable to him is sufficient to support a personal judgment against him, the same proceedings may be had for a personal judgment against him as if the process or pleading had been served on him in the state.

This section reflects a clear policy to assert jurisdiction over individual defendants to the full extent permitted by the Due Process Clause. See *Pasquale v. Genovese*, 136 Vt. 417, 419, 392 A.2d 395, 397 (1978); see also V.R.C.P. 4(e); Reporter's Notes to V.R.C.P. 4(e) (this rule provides for service outside the state

and incorporates the language of long arm statute which "reaches to the outer limits permitted by the due process clause"). The jurisdictional issue must therefore be resolved under federal constitutional law, as defined in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny. See *Chittenden Trust Co. v. Bianchi*, 148 Vt. 140, 141, 530 A.2d 569, 570 (1987).

The Due Process Clause limits the power of a state court to render judgments against nonresident defendants. See *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 108 (1987). In order to invoke personal jurisdiction over an individual defendant, the defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co.*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). This "minimum contacts" requirement serves two purposes: it protects defendants from being forced to defend themselves in a "distant or inconvenient forum," and it "acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

The "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of [minimum] contact with the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Additionally, the foreseeability of being summoned into a foreign jurisdiction, while not wholly irrelevant, "has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World-Wide Volkswagen*, 444 U.S. at 295–97. Rather, the critical consideration is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 297. This reasonableness requirement is met when a defendant purposefully directs his or her activities towards residents of the forum state and the litigation that results arises from those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Under

this "purposeful availment" requirement, a defendant cannot be summoned into a jurisdiction merely as a result of fortuitous, attenuated or random contacts.

■ Finally, once the court determines that a nonresident defendant has "purposefully established minimum contacts within the forum State," *id.* at 476, several factors must be considered to ensure that exercising personal jurisdiction over the defendant is reasonable and will not offend *International Shoe*'s "traditional notions of fair play and subs.antial justice." *Asahi Metal Industry,* 480 U.S. at 113.

> A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies."

*Id.* at 113 (quoting *World-Wide Volkswagen,* 444 U.S. at 292).

Defendant, relying primarily on *Robinson v. International Industries Limited,* 139 Vt. 444, 430 A.2d 457 (1981), and *Carothers v. Vogeler,* 148 Vt. 316, 532 A.2d 580 (1987), argues that he does not have the requisite minimum contacts with Vermont to invoke jurisdiction. We disagree. In *Robinson,* a Vermont resident ordered goods from a supplier in Florida who in turn ordered the goods from the manufacturer in Tennessee. 139 Vt. at 445, 430 A.2d at 458. The supplier requested that the prepaid goods be shipped directly to Vermont by common carrier. Aside from this transaction, the manufacturer had no other contact with Vermont. We found that there was no minimum contact with Vermont because title to the goods passed in Tennessee and the goods were shipped to Vermont under the direction of their owner. *Id.* at 446, 430 A.2d at 459. We therefore concluded that plaintiff's cause of action arose at the time and place of the goods' delivery, which was in Tennessee. *Id.*

We also determined that personal jurisdiction did not exist in *Carothers,* although the question there was whether jurisdiction existed in Ohio. 148 Vt. at 319, 532 A.2d at 582. In that case, the plaintiff brought suit in a Vermont court seeking to domesti-

cate an Ohio judgment. We concluded that the defendant's only contact with Ohio was that he advertised his antique automobile in a nationally circulated publication. Plaintiff came to Vermont to inspect, purchase and take delivery of the vehicle. We therefore held that defendant never established the requisite minimum contacts with Ohio because the quality and nature of his conduct did not "make it reasonable for him to conduct his defense in a foreign state." *Id.* at 319, 532 A.2d at 582.

In both *Robinson* and *Carothers*, the defendants' contacts with the foreign state were merely fortuitous and the defendants did not "purposefully [avail themselves] of the privilege of conducting activities within the forum State." *Hanson*, 357 U.S. at 253. In the present case, defendant's contact with Vermont was purposeful and intentional. We find, therefore, that neither *Robinson* nor *Carothers* control this case. A more significant precedent is *Bard Building Supply Co. v. United Foam Corp.*, 137 Vt. 125, 400 A.2d 1023 (1979).

In *Bard*, the Vermont plaintiff ordered goods from the defendant in Pennsylvania. Although defendant did no business in Vermont, it accepted plaintiff's order and shipped the goods C.O.D. to plaintiff in Vermont. We found that factors such as an "active and intentional participation in the Vermont market" and an "intentional and affirmative action" by a nonresident defendant were the key elements which gave rise to the minimum contacts necessary to support an in personam judgment in Vermont. *Id.* at 129, 400 A.2d at 1025. We concluded that these elements were met and therefore held that the single act of shipping the goods C.O.D. was sufficient minimum contact with Vermont to confer jurisdiction here. *Id.*

In this case, defendant initiated the contact with plaintiff in Vermont. He purposefully sought out and directed his activity towards a Vermont corporation. Defendant's contact with the state is neither fortuitous, attenuated, nor random, but rather the result of an intentional act to advance his commercial interests. Under these circumstances, defendant should have reasonably anticipated being sued in Vermont if a dispute arose from these activities. Further, this litigation arises out of defendant's contacts with Vermont. Thus, we find that defendant

has established the requisite minimum contacts with Vermont. The fact that he has never traveled to Vermont and that his only contacts with the state were through the mail and by telephone is not determinative. Because of the nature of defendant's contacts, Vermont may nevertheless invoke jurisdiction over him. See *Burger King*, 471 U.S. at 476.

Defendant's second point is that the trial court erred in granting summary judgment in favor of plaintiff because a genuine issue of material fact existed. Specifically, defendant argues that the issues of fact go to whether the contract was void for failure of consideration and whether plaintiff did anything it was obligated to do under the contract.

■ To prevail on a motion for summary judgment, the moving party must satisfy a stringent two-part test: first, there must be no genuine issues of material fact between the parties, and second, the moving party must be entitled to judgment as a matter of law. *Thomas v. Farrell*, 153 Vt. 12, 15, 568 A.2d 409, 410 (1989); see also V.R.C.P. 56(c).

Defendant's position on the summary judgment issue is clearly weakened by his failure to respond to the motion before the trial court. Thus, defendant must rely on facts that were included in his affidavits in support of his motion to dismiss on jurisdictional grounds. We conclude that these facts were inadequate to defeat summary judgment and plaintiff met the two-part test.

■ Defendant relies on three factual statements to defeat summary judgment: (1) plaintiff's president represented that it could sell the airplane for $194,000 or more within thirty days time; (2) plaintiff's president represented that it would advertise the airplane nationally; and (3) plaintiff's president refused to answer defendant's calls to tell defendant of the status of the sale efforts. It is difficult to see how the first two facts help defendant. The written contract signed by defendant specifically gave plaintiff ninety days to sell the airplane and authorized, but did not require, advertising. When an instrument is clear and unambiguous, we look to its plain meaning to determine the understanding and intent of the parties. See *Merritt v. Merritt*, 146 Vt. 246, 250, 500 A.2d 534, 537 (1985). The law pre-

sumes the parties intended to be bound by the plain and express language of their contracts as they are written. See *Vermont State Colleges Faculty Federation v. Vermont State Colleges*, 141 Vt. 138, 144, 446 A.2d 347, 350 (1982); *Pond v. Carter*, 126 Vt. 299, 309, 229 A.2d 248, 255 (1967) (in exclusive listing agreement case, clear language may not be altered or supplemented by evidence of "understanding of the parties"). Further, when parties embody their agreement into a writing, evidence of a prior or contemporaneous oral agreement is not admissible to vary the terms of the written agreement. See *Big G Corp. v. Henry*, 148 Vt. 589, 591–92, 536 A.2d 559, 560–61 (1987). If these were special oral agreements to sell within a particular period of time or advertise nationally, they would have occurred prior to the written agreement. Therefore, the parol evidence rule would prevent defendant in this case from introducing evidence of the additional or different oral terms not embodied in the clear written contract between the parties. See V.R.C.P. 56(e) (summary judgment affidavit must show "facts as would be admissible in evidence"). Whatever was said between defendant and plaintiff's president, the contract gave plaintiff ninety days to sell the airplane and did not require national advertising.

Nor can we accept that the failure of plaintiff's president to return telephone calls could be found to defeat plaintiff's motion for summary judgment. The contract did not require plaintiff to communicate with defendant or make any specific progress within a thirty day time period.

Finally, we do not see how defendant's position is advanced by labeling his theory as failure of consideration rather than breach of contract. The written contract was in the nature of an exclusive listing agreement, with the consideration lying in the mutual promises. See, e.g., *Real Estate Listing Service, Inc. v. Connecticut Real Estate Comm.*, 179 Conn. 128, 135, 425 A.2d 581, 585 (1979). In this case, the contract specifically itemized the plaintiff's obligation to use its best efforts to effect a sale of the airplane. Thus, what defendant has labeled failure of consideration is really an alleged failure to render performance as obligated. See Restatement (Second) of Contracts § 237

(1979). We cannot find a failure of performance in this case because plaintiff never agreed to take any particular steps within thirty days.

The exclusive listing agreement clearly specified that plaintiff was entitled to a commission if an agreement to sell the airplane was executed between defendant and a purchaser as a result of the efforts of the defendant or any other person during the period of the agreement. It is undisputed that an agreement to sell the airplane was entered into during the term of the contract. Thus, plaintiff was entitled to its commission, and summary judgment was properly entered for it.

*Affirmed.*