## BEN & JERRY'S HOMEMADE, INC., Plaintiff,

v.

## CORONET PRISCILLA ICE CREAM CORP., Defendant.

No. 2:95–CV–23.

United States District Court,
D. Vermont.

Jan. 9, 1996.

Robert S. DiPalma, Paul, Frank & Collins, Inc., Burlington, VT, Douglas H. Meal, David R. Suny, Ropes & Gray, Boston, MA, for Ben and Jerry's Homemade, Inc.

Richard C. Carroll, Kristensen, Cummings, Murtha & Stewart, P.C., Brattleboro, VT, for Coronet Priscilla Ice Cream Corp.

## OPINION AND ORDER

SESSIONS, District Judge.

This matter is before the Court on cross-motions by the Plaintiff and Defendant. Defendant has filed a Motion to Dismiss for lack of personal jurisdiction, pursuant to Fed. R.Civ.P. 12(b)(2). Plaintiff opposes this motion. Plaintiff has filed a Motion for Summary Judgment, in accordance with Fed. R.Civ.P. 56(c). Defendant has filed opposition to this motion. Affidavits and supporting documents have been attached to the motions.

### I. Factual Background

This is a diversity action based on a breach of contract claim. Plaintiff, Ben & Jerry's Homemade, Inc., ("Ben & Jerry's Homemade") is a corporation organized under the laws of the state of Vermont and has its principal place of business in Waterbury, Vermont. Defendant, Coronet Priscilla Ice Cream Corp., ("Coronet") is a New York corporation that has its principal place of business in Hicksville, New York. Plaintiff claims that it sold ice cream to Defendant, for which Defendant has refused to pay.

The following facts are not in dispute. Coronet distributes ice cream products and frozen foods in the New York metropolitan area. It began distributing Ben & Jerry's ice cream when it acquired the Ice Cream Man, Inc., a New York corporation. At that time, Coronet purchased Ben & Jerry's ice cream from Edy's Gourmet Ice Cream, Inc., ("Edy's"), another New York corporation. In February of 1994, Ben & Jerry's of New York, Inc., ("Ben & Jerry's of New York"), replaced Edy's as the exclusive distributor of Ben & Jerry's products in the metropolitan New York area for the class of trade "less than three cash registers." Ben & Jerry's of New York is a corporation organized under the laws of the state of New York with offices in Long Island City, New York. Coronet is a sub-distributor serving the less than three cash register class of trade.

On September 22, 1994, Coronet received a shipment of $61,268.12 worth of ice cream. Coronet was given a credit of $2,268.22 so that there was an outstanding balance of $58,999.90 for the ice cream. The shipment was sent F.O.B. Waterbury, Vermont from Ben & Jerry's Homemade. Coronet initially sent a check to Ben & Jerry's of New York for $58,999.90 to pay for the ice cream. Subsequently, Coronet stopped payment on the check. Shortly thereafter, the distributorship arrangement ended. On January 19, 1995, Ben & Jerry's Homemade filed suit against Coronet for failing to pay for the ice cream.

The remaining facts are in dispute. Coronet alleges that it has never entered into a contract with Ben & Jerry's Homemade. Instead, it has dealt with Ben & Jerry's of New York, a separate legal entity. Coronet maintains that it had a distributorship agreement with Ben & Jerry's of New York, with whom it placed all orders, including the shipment in question. As a sub-distributor for Ben & Jerry's of New York, Coronet worked with its Distribution Manager, Steven Cooperman.

Coronet's contact with Ben & Jerry's Homemade purportedly has been very limited. According to Coronet, it has never made a payment for Ben & Jerry's products to Ben & Jerry's Homemade. Rather, it has sent all payments to Ben & Jerry's of New York in Long Island City, New York. Although the President of Coronet, Steven Levine, has met Jerry Greenfield, co-founder of Ben & Jerry's Homemade, in New York on occasion and has had several telephone conversations with Mr. Greenfield and Thomas D'Urso, the Manager of Treasury Operations for Ben & Jerry's Homemade, Coronet avers that it has not "reached out" to do business in Vermont or engaged in a business relationship with Ben & Jerry's Homemade. Aff. of Steven Levine ¶ 14 ("Levine Aff.") (paper # 14).

Ben & Jerry's Homemade asserts that Coronet has contracted to purchase this shipment of ice cream, a full truckload, directly from Ben & Jerry's Homemade. Although some sales were made by Ben & Jerry's of New York to Coronet, whenever Coronet needed a full truckload of ice cream, it purchased it from Ben & Jerry's Homemade.

Supp.Aff. of Thomas D'Urso ¶ 7 ("D'Urso Supp.Aff.") (paper # 17). Mr. D'Urso asserts that the content of his telephone conversations with Mr. Levine included, among other things, a discussion of payment, shipment and credit terms. D'Urso Supp.Aff. ¶ 8. Ben & Jerry's Homemade submits a bill of lading and an invoice, both printed on letterhead of Ben & Jerry's of Vermont, as evidence of its contention that full truckloads of ice cream, including this one, were sent pursuant to an agreement between it and Coronet. See Exh. A attached to Aff. of Thomas D'Urso ("D'Urso Aff.") (paper # 6) and Exh. A attached to D'Urso Supp.Aff. The invoice indicates that payment should be remitted to Ben & Jerry's Homemade, Inc. It also notes a credit of $2,268.22. However, it shows Steven Cooperman, of Ben & Jerry's of New York, as the salesperson for the shipment. Coronet does not contest the genuineness of the bill of lading or the invoice.

For the reasons discussed below, the parties' respective motions are denied. The Court shall address each motion *seriatim*.

## II. Discussion

### A. Personal Jurisdiction

■ In considering a motion to dismiss on jurisdictional grounds, the Court must take all allegations in the light most favorable to the plaintiff. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985). However, the plaintiff "bears the burden of demonstrating contacts with the forum state sufficient to give the court jurisdiction over the person of the defendant." *Sollinger v. Nasco Intern., Inc.*, 655 F.Supp. 1385, 1386 (D.Vt.1987). When there has been limited discovery and when the motion is being decided without an evidentiary hearing, as here, the plaintiff need make only a prima facie showing of jurisdiction, through its own affidavits and supporting materials. *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981). Having set forth the appropriate standard for assessing the motion to dismiss, the Court now turns to the merits.

■ Personal jurisdiction over a nonresident defendant in a diversity action is determined on the basis of Vermont law, which invokes a two part analysis. *See Arrowsmith v. United Press International*, 320 F.2d 219, 231 (2d Cir.1963); *Braman v. Mary Hitchcock Memorial Hospital*, 631 F.2d 6, 7–8 (2d Cir.1980); *Northern Aircraft, Inc. v. Reed*, 154 Vt. 36, 40, 572 A.2d 1382 (1990). First, the Court must find that Vermont's long arm statute reaches the defendant. Second, it must determine that the exercise of the state's long arm statute does not offend due process. *Northern Aircraft*, 154 Vt. at 40, 572 A.2d 1382; *see also Sollinger*, 655 F.Supp. at 1387. Defendant was served pursuant to V.R.C.P. 4(e) and 12 V.S.A. § 913(b), the relevant Vermont long arm statute. Title 12 V.S.A. § 913(b) provides:

> Upon the service [on a party outside the state], and if it appears that the contact with the state or by the party or the activity in the state by the party or the contact or activity imputable to him is sufficient to support a personal judgment against him, the same proceedings may be had for a personal judgment against him as if the process or pleading had been served on him in the state.

Interpreting this section, the Vermont Supreme Court has held that an exercise of jurisdiction over an out-of-state defendant is proper if it comports with the due process clause. *Northern Aircraft*, 154 Vt. at 40, 572 A.2d 1382. Accordingly, the first part of the analysis merges into the second. Thus, the Court can proceed to an application of the due process clause.

■ The purpose of the due process clause is to ensure that a nonresident defendant is not subject to the binding judgments of a forum with which it has had no significant contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 2181–82, 85 L.Ed.2d 528 (1985). To satisfy due process, a nonresident defendant must have established minimum contacts with the forum state such that the defendant "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). A defendant should "reasonably anticipate" out-of-state litigation when it "purposefully avails itself of the priv-

ilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

■ Arguing that its contact with Vermont has been fortuitous, attenuated and random, Defendant claims that it does not have the requisite minimum contacts with Vermont to sustain jurisdiction. Defendant does not have a Vermont office, it has no sales in Vermont, and it has never visited the state. Nonetheless, for purposes of deciding the instant matter, the Court must review the evidence in the light most favorable to the Plaintiff. Taken together, Plaintiff's claim that Defendant purchased the shipment in question from it, Mr. D'Urso's statement that he spoke with the Defendant's President about shipment, payment and credit terms, the invoice indicating that payment is to be remitted to Ben & Jerry's Homemade, and the uncontroverted evidence that Plaintiff sent the shipment F.O.B. Waterbury, Vermont establish contacts sufficient to invoke specific jurisdiction.[1]

Intentional and affirmative action by the nonresident defendant in the forum state is the key to personal jurisdiction. *Pasquale v. Genovese,* 136 Vt. 417, 421, 392 A.2d 395 (1978). According to Plaintiff, Defendant has purposefully contracted for the purchase of goods manufactured, sold, and shipped in the forum state. Furthermore, the invoice indicates that payment is to be made to Ben & Jerry's Homemade and lists an account credit of $2,268.22, which Coronet presumably

has with Ben & Jerry's Homemade. At this stage of the proceedings,[2] this provides ample basis for the Court to conclude that the Defendant took intentional and affirmative action to enter into the Vermont marketplace.

Although Defendant has never travelled to Vermont, mere absence of physical presence in the state cannot defeat jurisdiction. *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184. In many commercial transactions, the parties' business relationship is conducted entirely through mail, telephone and facsimile, thus "obviating the need for physical presence within a State in which business is conducted." *Id.* Plaintiff and Defendant have had several telephone contacts, as well as meetings in New York, allegedly to discuss terms of the distributorship arrangement. These communications indicate the existence of a business relationship between Plaintiff and Defendant, such that the Defendant has created "continuing obligations" between itself and a Vermont resident. *Id.* (citing *Travelers Health Assn. v. Virginia,* 339 U.S. 643, 648, 70 S.Ct. 927, 929–30, 94 L.Ed. 1154 (1950)).

Finally, Plaintiff's shipment of the ice cream F.O.B. Waterbury, Vermont shows that the Defendant availed itself of the protection of the laws of Vermont, and hence submitted to personal jurisdiction. Under the Vermont Uniform Commercial Code,[3] when goods are shipped F.O.B. Vermont, title and risk of loss pass to the buyer in Vermont.[4] The Second Circuit Court of Appeals has held that when a party assumes the

---

1. When a court exercises personal jurisdiction over a defendant arising out of or related to the defendant's contact with the forum, the court is said to be asserting specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–15, n. 8, 104 S.Ct. 1868, 1872, n. 8, 80 L.Ed.2d 404. On the other hand, when a court exercises personal jurisdiction over a defendant in a suit unrelated to the defendant's contacts with the forum, it is asserting general jurisdiction. *Id.* at n. 9.

2. The Court notes, however, that the plaintiff eventually must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial. *Marine Midland Bank,* 664 F.2d at 904.

3. There is no agreement between the parties regarding choice of law. However, the Court finds it unnecessary to resolve this issue at this time, because Vermont and New York law similarly define passage of title and risk of loss for an F.O.B. place of shipment contract.

4. *See* Vt.Stat.Ann. tit. 9A, § 2–401(2)(a) (1966 & Supp.1994); N.Y.Stat.Ann., chapter 38 § 2–401(2)(a) (McKinney 1995) (if the contract requires the seller to send the goods to the buyer, but does not require him or her to deliver them at destination, title passes to the buyer at time and place of shipment). *See also* Vt.Stat.Ann. tit. 9A, § 2–509(1)(a); N.Y.Stat.Ann., chapter 38 § 2–509(1)(a) (risk of loss also passes to the buyer at time and place of shipment).

title and risk of loss of goods in a particular state, it enjoys the benefits and protections of the laws of that state in an overt physical manner, and thus may subject itself to that state's jurisdiction. *Agrashell, Inc. v. Bernard Sirotta Co.*, 344 F.2d 583, 588 (2d Cir. 1965);[5] *Electric Regulator Corp. v. Sterling Extruder Corp.*, 280 F.Supp. 550, 556 (D.Conn.1968).

The Vermont Supreme Court has likewise found the place of passage of title and risk of loss relevant to the exercise of personal jurisdiction. *See Robinson v. International Indus. Ltd.*, 139 Vt. 444, 446, 430 A.2d 457 (1981). In *Robinson*, the court held that one of the reasons that it did not have personal jurisdiction over the defendant was that title to the goods and risk of loss passed in Tennessee, rather than in Vermont. *Id. See also, Ameritech Mobile Comm., Inc. v. Cellular Comm.*, 664 F.Supp. 1175, 1178 (N.D.Ill. 1987), (in deciding whether personal jurisdiction existed under the Illinois long arm statute, which extends to the limits of the due process clause, court considered, *inter alia*, that the terms of delivery were F.O.B. Illinois); *Océ Industries, Inc. v. Coleman*, 487 F.Supp. 548, 550–51 (N.D.Ill.1980) (court's finding of personal jurisdiction depended, in part, on the fact that title and risk of loss passed to the nonresident defendant in the forum state); *Georgia–Pacific Corp. v. WHDH Corp.*, 374 F.Supp. 1076, 1079 (D.Me. 1974) (court regarded fact that shipment was made F.O.B. Maine as relevant to a finding of personal jurisdiction over the nonresident defendant). When title and risk of loss passed to Defendant in Vermont, Defendant invoked the protection of the laws of Vermont, a factor in establishing minimum contacts with a forum state.

Even if a defendant has purposefully directed its activities to the forum state, an assertion of personal jurisdiction must not offend "traditional notions of fair play and substantial justice." *Burger King*, 471 U.S. at 478, 105 S.Ct. at 2185 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). Factors bearing on whether an exercise of personal jurisdiction comports with fair play and substantial justice include: 1) the burden on the defendant in litigating in an out-of-state forum; 2) the forum state's interest in hearing the dispute; 3) the plaintiff's interest in obtaining convenient relief; 4) the interstate judicial system's interest in resolving controversies efficiently; and 5) the shared interest of the states in forming substantive social policy.[6] *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184 (citing *World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564–65).

Because a case involving the same parties and arising out of related facts is currently pending in New York state court,[7] the Court has a concern about whether it is the most appropriate forum for resolving this dispute. Nonetheless, its concern does not rise to such a level as to defeat personal jurisdiction at this time. *See id.* 471 U.S. at 478, 105 S.Ct. at 2185. The Court finds the Defendant to have sufficient minimum contacts with Vermont such that traditional notions of fair play and substantial justice are not violated by the exercise of jurisdiction. Defendant's Motion to Dismiss for lack of personal jurisdiction is therefore denied.

### B. *Summary Judgment*

Summary judgment shall be granted if there is no genuine dispute as to any material fact and the moving party is entitled to

---

5. At the time *Agrashell* was decided, the particular New York long arm statute in question was assumed to be as broad as the due process clause. That section was later interpreted as narrower than federal constitutional law, and thus, the *Agrashell* decision was distinguished. *See Galgay v. Bulletin Co., Inc.*, 504 F.2d 1062, 1066 (2d Cir.1974). Because the pertinent Vermont long arm statute reaches to the fullest extent permitted by the due process clause, the reasoning of the Second Circuit in *Agrashell* continues to be relevant.

6. While these considerations can defeat jurisdiction where minimum contacts exist, they may also serve "to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184.

7. *Coronet Priscilla Ice Cream Corp. v. Ben & Jerry's Vermont's Finest Ice Cream & Frozen Yogurt, Jerry Greenfield, et. al.*, Index No. 02371/94, filed in Supreme Court of the State of New York, County of Queens, Nov. 4, 1994.

judgment as a matter of law. Fed.R.Civ.P. 56(c). A fact is material when it affects the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). There is a genuine dispute over a material fact when the "evidence supporting the claimed factual dispute [is] shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* at 249, 106 S.Ct. at 2510 (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)). In deciding a motion for summary judgment, the court must resolve all ambiguities and inferences in favor of the nonmoving party. *Foucher v. First Vermont Bank & Trust Co.*, 821 F.Supp. 916, 922 (D.Vt.1993) (citing *Levin v. Analysis & Technology, Inc.*, 960 F.2d 314, 316 (2d Cir. 1992)).

 Applying the standard for summary judgment to the instant matter, the Court finds that Ben & Jerry's Homemade's shipment of a truckload of ice cream to Coronet's place of business is a fact not in dispute.[8] It is also undisputed that Coronet received the ice cream, which it did not reject or otherwise claim was unacceptable.[9] However, from whom Coronet purchased the ice cream, for which it owes $58,999.90, is in dispute. According to governing law on breach of contract,[10] whether there was a contract between the parties is a material fact.

 In defining the elements of a breach of contract claim, the Vermont Supreme Court has stated, "[i]n the obligation assumed by a party to a contract is found his duty, and his failure to comply with the duty constitutes a breach." *Lapoint v. Dumont Const. Co.*, 128 Vt. 8, 10, 258 A.2d 570

(1969).[11] Inherent in this definition is that to have a breach, there must be a contract. Whether the parties entered into a contract is a determination for the factfinder. *See Bemis v. Lamb*, 135 Vt. 618, 620, 383 A.2d 614 (1978) (appellate court will not overturn trial court's decision, based on the evidence, that the parties did not enter into an agreement, unless clearly erroneous). *Accord Nu–Air Mfg. Co. v. Frank B. Hall & Co. Of New York*, 822 F.2d 987, 991 (11th Cir.1987) (whether valid contract existed was a question for the jury, and thus, it was a factual issue that could not be resolved at the summary judgment stage). To defeat a motion for summary judgment, Defendant must come forward with enough evidence to support a verdict in its favor. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

Plaintiff contends that it has a contract with Defendant because it sold the shipment of ice cream directly to the Defendant. In opposition to Plaintiff's contention, Defendant maintains that it bought the ice cream from Ben & Jerry's of New York, a separate legal entity. To support it's assertion, Defendant offers more than conclusory allegations or mere conjecture. *See id.* at 586, 106 S.Ct. at 1355. Most importantly, Defendant submits an affidavit of Steven Cooperman, the Distribution Manager of Ben & Jerry's of New York, to show that it did not purchase the ice cream from Ben & Jerry's Homemade. Rather, Ben & Jerry's Homemade sold its products to Ben & Jerry's of New York, who in turn sold the products to subdistributors. In his affidavit, filed in the case pending in New York state court, Mr. Cooperman states:

[t]hus, beginning on February 7, Ben & Jerry's sold its products directly to Ben &

---

8. See Statements submitted by both parties in compliance with Local Rule 5(c)(1) and (c)(1)(A). (papers # 5 and # 12).

9. See Plaintiff's Local Rule 5(c)(1) Statement at ¶ 8 (paper # 5), and Defendant's Local Rule 5(c)(1)(A) Statement at ¶ 2 (paper # 12), which denies that amounts are owed to Plaintiff, but does not appear to dispute the fact that there are amounts owed for the ice cream.

10. In a diversity action, the court shall apply state law to resolve the dispute. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).

11. Again, the law of New York is similar. *See Dalton v. Educational Testing Service*, 87 N.Y.2d 384, 639 N.Y.S.2d 977, 663 N.E.2d 289 (1995). In fact, it is axiomatic to state that to prevail on a breach of contract claim, there must be a contract.

Jerry's of New York and Ben & Jerry's of New York sold the products to the sub-distributors in the metropolitan New York region who were serving the less-than-three cash register class of trade—including Coronet.

Exh. B attached to Supp.Aff. of Steven Levine ("Levine Supp.Aff.") (paper # 18).

To buttress its position that it had a contract with Ben & Jerry's of New York, rather than Ben & Jerry's Homemade, Defendant points to the check it sent to Ben & Jerry's of New York to pay for the ice cream at issue, which Ben & Jerry's of New York endorsed.[12] Exh. D attached to Levine Supp.Aff. Further, Defendant submits a purchase order for the ice cream, which gives the telephone number of Ben & Jerry's of New York as the contact number. Exh. C attached to Levine Supp.Aff. Finally, Steve Cooperman is listed as the salesperson on the invoice, submitted by Ben & Jerry's Homemade.

This evidence, together with the statement by Steven Cooperman, provides sufficient grounds for a reasonable person to conclude that Defendant purchased the ice cream from Ben & Jerry's of New York, not Ben & Jerry's Homemade.[13] Thus, there is a genuine issue of fact as to whether a contract existed between Plaintiff and Defendant that requires the factfinder to resolve the differing versions of the truth. For this reason, Plaintiff's Motion for Summary Judgment is denied.

## III. Conclusion

It is hereby ORDERED that Defendant's Motion to Dismiss for lack of personal jurisdiction is DENIED without prejudice. It is further ORDERED that Plaintiff's Motion for Summary Judgment is DENIED.

---

12. The check was not cashed because Coronet subsequently stopped payment on the check.

13. Ben & Jerry's Homemade has not argued that any amounts owed to Ben & Jerry's of New York are necessarily due to Ben & Jerry's Homemade.