Warshow v. Crompton Corp., No. 1566-02 CnC  (Norton, J., Apr. 22, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT
Chittenden County, ss.:

JOHN WARSHOW and DANA HOULIHAN

v.

CROMPTON CORPORATION; UNIROYAL
CHEMICAL COMPANY, INC.; UNIROYAL
CHEMICAL COMPANY LIMITED; FLEXSYS
NV; FLEXSYS AMERICA LP; BAYER AG;
BAYER CORPORATION; RHEIN CHEMIE
RHEINAU GMBH; and RHEIN CHEMIE
CORPORATION

ENTRY

The plaintiffs have filed a class-action complaint against defendant chemical companies, seeking damages for the alleged price-fixing of certain rubber-processing chemicals that third-party manufacturers used in producing tires. The plaintiffs seek to form a class of all tire consumers in Vermont since 1994. Several defendants—Crompton Corporation and its Uniroyal subsidiaries ("Crompton") and Flexsys NV and its subsidiary, Flexsys America LP ("Flexsys")—have filed motions to dismiss for lack of personal jurisdiction.

The court's personal jurisdiction over nonresident defendants, such as those here, extends "to the full extent permitted by the Due Process Clause." Dall v. Kaylor, 163 Vt. 274, 275 (1995). Accordingly, the court looks to federal constitutional standards in

determining personal jurisdiction. N. Aircraft v. Reed, 154 Vt. 36, 41 (1990). The plaintiff bears the burden of establishing personal jurisdiction by pleading specific facts that, when accepted as true, satisfy Due Process standards for personal jurisdiction. Schwartz v. Frankenhoff, 169 Vt. 287, 295 (1999).

Due Process standards for personal jurisdiction require that nonresident defendants have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). These "minimum contacts" require that "'the defendant's conduct and connection with the forum State are such that [the defendant] should reasonably anticipate being haled into court there.'" Dall, 163 Vt. at 276 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

Courts generally recognize that a defendant's conduct can satisfy minimum contacts in two ways. First, "[s]pecific jurisdiction exists when 'a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'" Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567–68 (2d Cir. 1996) (quoting Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984)). Second, "a court's general jurisdiction . . . is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." Id. at 568. General jurisdiction requires "'continuous and systematic general business contacts'" on the part of a defendant. Id. (quoting Helicopteros, 466 U.S. at 416). Here, the plaintiffs argue that the court has specific jurisdiction over both Crompton and Flexsys, as well as general jurisdiction over Crompton.

Turning first to specific jurisdiction, the court notes that neither Crompton or Flexsys are registered corporations in Vermont. Neither own property in Vermont, have employees or agents in Vermont, pay Vermont taxes, or specifically target Vermont with marketing or advertising. Obviously, therefore, neither have any direct contacts related to the sale of tires in Vermont. At best, Crompton and Flexsys have contacts with Vermont related to this litigation through the chemical products that third-party manufacturers unilaterally use to produce tires out of state. These manufacturers then distribute the tires, with Crompton or Flexsys chemicals in them, to Vermont residents. On these facts,

Crompton and Flexsys did no more than place their products into the stream of commerce with no intentional effort to direct the flow of this stream toward Vermont. This is not enough to establish specific jurisdiction. The plaintiffs would need to establish that Crompton and Flexsys "purposefully direct[ed their] activity toward residents" of Vermont and that "the litigation arises out of, or relates to, that activity." Dall, 163 Vt. 276; see also N. Aircraft v. Reed, 154 Vt. 36, 41 (1990) ("The 'unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of [minimum] contact with the forum State.'" (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958))).

The plaintiffs argue, however, that because of Crompton's and Flexsys's dominance in the chemical industry and their relationship with tire manufacturers, they could reasonably anticipate that their products would be distributed in Vermont. The plaintiffs liken the relationship between Crompton and Flexsys and the manufacturers as one between a defendant manufacturer and a third-party distributor, where the distributor essentially acts as an agent of the defendant.

Specific jurisdiction may exist in circumstances where a nonresident defendant maintains a relationship with a third-party distributor such that the defendant essentially directs the distributor's activities toward the forum state. See, e.g., Hedges v. W. Auto Supply Co., 161 Vt. 614, 614–15 (1994) (mem.) (holding that defendant "'purposely availed' itself of Vermont's market by selling its heaters to a well-known national distributorship which does business in Vermont"); Charles Gendler & Co. v. Telecom Equip. Corp., 508 A.2d 1127, 1137 (N.J. 1986) ("A foreign manufacturer that purposefully avails itself of [state legal and economic benefits] should be subject to personal jurisdiction, even though its products are distributed by independent companies or by an independent, but wholly-owned, subsidiary."); cf. DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 285 (3d Cir. 1981) (holding that vessel manufacturer did not utilize vessel owners as distributors of vessel and thus did not "take advantage of an indirect marketing scheme" in manner that purposefully availed manufacturer to forum state). Here, neither Crompton or Flexsys sent their chemical products directly into Vermont for the manufacture of tires through third-party distributors in a manner akin that in a manufacturer-distributor situation.

At least one court, however, has held that a component manufacturer may establish a relationship with a third-party manufacturer akin to a manufacturer-distributor

3

relationship such that the component manufacturer could be haled into a state court where its only contacts are through the third-party manufacturer. See Ruckstahl v. Owens Corning Fiberglas Corp., 731 So. 2d 881, 889–90 (La. 1999). In Ruckstahl, the Louisiana Supreme Court held that a cigarette filter manufacturer had purposefully availed itself to the forum state through a cigarette manufacturer's distribution of the cigarettes in the forum state. The filter manufacturer had an exclusive supply agreement with the cigarette manufacturer, and the cigarettes were heavily marketed as having a special type of filter. See id. The filter manufacturer had made "a single product for a single purpose for a single customer for a period of five years." Id. at 890. Under these circumstances, the court held that the filter manufacturer had purposefully availed itself of the opportunity to conduct business activities within Louisiana and should have reasonably foreseen being haled into court there. Id.

Here, the court can readily distinguish the relationship between Crompton and Flexsys and the tire manufacturers from the relationship described in Ruckstahl. Crompton and Flexsys have never maintained an exclusive sales agreement with the tire manufacturers. Nor are tires marketed as containing special chemical components that Crompton or Flexsys provided. The plaintiffs proffer no facts to suggest that specific tire rubber chemical components produced by Crompton or Flexsys influence an average tire consumer making a purchase in Vermont. Ruckstahl is therefore not persuasive in this case, and the court does not view the tire manufacturers as "distributors" of chemical components that Crompton or Flexsys provide. Crompton and Flexsys merely sell various chemical products to many different manufacturers. No facts demonstrate that they had any purposeful availment of certain forum states by influencing tire manufacturers' marketing or distribution channels.

The plaintiffs also fail to demonstrate specific jurisdiction based on the "effects test." The Supreme Court of the United States has recognized that a state may exercise personal jurisdiction over an out-of-state defendant whose "intentional, and allegedly tortious, actions were expressly aimed" at the forum state. Calder v. Jones, 465 U.S. 783, 789 (1984). A defendant who does not expressly aim his or her actions at the forum state, however, does not fall under the forum state's jurisdiction under this test. See, e.g., Chaiken v. V V Publishing Corp., 119 F.3d 1018, 1029 (1st Cir. 1997). "[M]erely asserting that a defendant knew or should have known that his intentional acts would cause harm in the forum state is not enough to establish jurisdiction under the effects

test." Pavlovich v. Superior Court, 29 Cal. 4th 262, 270–71, 58 P.3d 2, 8, 127 Cal. Rptr. 2d 329, 336 (Cal. 2002). Here, the plaintiffs have not established that Crompton or Flexsys expressly aimed their alleged price-fixing activities at the Vermont market, even if the court were to assume that price-fixing is a tortious act. Demonstrating that Crompton and Flexsys merely placed their product into the stream of commerce with the foreseeable result that it would wind up in tires in Vermont does not establish sufficient minimum contacts under the effects test.

Finally, turning to general jurisdiction, the plaintiffs have not shown continuous and systematic contacts on Crompton's part. The plaintiffs point to sales of chemicals (unrelated to tire production) to a Vermont manufacturer over a period of several years. As part of these sales efforts, Crompton frequently sent a sales representative to Vermont. Crompton also advertises in nationally distributed publications, several of which target the northeastern U.S. market. Presumably, some of these advertisements reach Vermont. Crompton also distributes some of its products through a distributor that focuses on the northeast market, thereby ensuring that some of its products (though, again, not those related to tire production) reach Vermont. Finally, Crompton has been sued in Vermont in relation to other products.

None of these allegations suffice to show adequate general business contacts. Although determining adequate contacts is a fact-specific inquiry, Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 570 (2d Cir. 1996), Crompton's contacts with Vermont do not amount to the continuous and systematic contacts found in most other cases. In Metro. Life Ins., for example, the Second Circuit Court of Appeals found that a nonresident company's sales volume in Vermont, its relationship with Vermont dealers, its customer support in Vermont, its direct marketing to Vermont firms, and its employee presence in Vermont all indicated that the company had continuous and systematic contacts with Vermont. Crompton, on the other hand, had contacts with Vermont mostly through its shipment of products to the state.[1] Its advertising and marketing efforts and the third-party distribution of its products were by no means targeted toward Vermont.

---

[1] Notably, Crompton sent these shipments F.O.B., meaning that title transferred to the Vermont company outside of Vermont. See Robinson v. Int'l Indus. Ltd., 139 Vt. 444, 446–47 (1981) (holding that Vermont lacked jurisdiction over nonresident defendant where title to defective goods passed to plaintiff in Tennessee).

Therefore, general jurisdiction is not appropriate in this case. See also <u>Burlington Indus. Inc. v. Maples Indus., Inc.</u>, 97 F.3d 1100, 1103 (8th Cir. 1996) ("Simple commercial contacts, unrelated to [plaintiff's] claims are insufficient to establish personal jurisdiction."); <u>Dalton v. R & W Marine, Inc.</u>, 897 F.2d 1359, 1362 (5th Cir. 1990) (holding that defendant's mere ownership of boats chartered by operators in forum state does not demonstrate continuous and systematic presence in forum state).

ORDER

The motions to dismiss on behalf of Crompton Corporation; Uniroyal Chemical Company, Inc.; Uniroyal Chemical Company Limited; Flexsys NV; and Flexsys America LP are GRANTED.

Dated at Burlington, Vermont, April 22, 2005.

_____/s/_____
Richard W. Norton    Judge