Hoplite, LLC v. The Catholic Univ. of Am., No. 1226-12-12 Cnsc (Crawford, J., Feb. 7, 2013)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

SUPERIOR COURT                                             CIVIL DIVISION
Chittenden Unit                                           Docket No.: 1226-12-12 Cnsc

Hoplite, LLC
        Plaintiff

        v.

The Catholic University of America
        Defendant

DECISION ON MOTION TO DISMISS

In this small claims case, plaintiff Hoplite, LLC (Hoplite) sues defendant The Catholic University of America (the University), alleging that the University booked Hoplite's clients to perform at an event, but then changed its mind. The University, represented by its Associate General Counsel Margaret O'Donnell, has filed a motion to dismiss for lack of personal jurisdiction pursuant to V.R.S.C.P. 4(e) (Cum. Supp. 2012).[1] Hoplite, represented by its President and CEO Thomas E. Baggott, opposes the University's motion, and has filed twelve exhibits in support of its opposition.

The court applies the V.R.C.P. 12(b)(2) standard to a Small Claims Rule 4(e) motion to dismiss. "A court has discretion to decide a pretrial motion to dismiss for lack of personal jurisdiction on the basis of affidavits alone, to permit discovery, and to conduct an evidentiary hearing." *Godino v. Cleanthes*, 163 Vt. 237, 239 (1995) (citing *Roman Catholic Diocese of Burlington, Inc. v. Paton Insulators, Inc.*, 146 Vt. 294, 296 (1985)). Here, neither party has requested an evidentiary hearing on the University's motion to dismiss, and the court concludes that the parties' dispute on this matter is entirely legal. To meet its burden of showing that the court has personal jurisdiction over the University, Hoplite need only make "a prima facie showing of jurisdiction, or, in other words, demonstrate facts which would support a finding of jurisdiction." *Mitec*, 2008 VT 96, ¶ 15, 184 Vt. 303 (quoting *Godino*, 163 Vt. at 239).

Considered in the light most favorable to Hoplite, the parties' pleadings and other materials suggest as follows. Hoplite is a Vermont corporation that, among other things, books musical performances. In May 2012, Bridgette Acklin—a student at the University and the "Events Coordinator" for the University's Graduate Student Association—contacted Hoplite

---

[1] There is no question that *venue* in the Chittenden Unit is proper pursuant to V.R.S.C.P. 2(b), since Hoplite is located in Burlington, Vermont. Even if venue is proper, that does not necessarily mean that the court has personal jurisdiction over the University.

regarding a potential fall concert at the University's Washington, D.C. campus. Hoplite sent proposed contracts to Ms. Acklin in June, and Ms. Acklin submitted the proposed contracts to University personnel for processing. According to Hoplite, the proposed contracts included the following language:

> It is mutually understood and agreed that this contract shall be governed by the laws of the State of Vermont, both as to interpretation and performance. Furthermore, any action at law, suit in equity, arbitration or other judicial proceeding for the enforcement of this contract or any provision thereof shall be instituted only in the courts of the State of Vermont.

Hoplite's Opp'n at 1 (filed Jan. 22, 2013).[2]

Ms. Acklin and Hoplite continued to exchange emails, and at one point Hoplite even offered to put in some calls to production companies once it became clear that the University would not be able to handle the technical production with its own staff and equipment. On August 28, the University's Campus Activities Program Coordinator, Steve Kreider, emailed Hoplite and noted that the University's General Counsel was uncomfortable with certain language in the contract. The language that was the basis of the General Counsel's discomfort was not the forum-selection and choice-of-law clause recited above. On August 30, Mr. Kreider emailed Hoplite again and indicated that the University would not be signing the proposed contracts. Hoplite filed this suit on December 10, 2012.

ANALYSIS

The terms of Vermont's long arm statutes are "broad enough to permit a court to exercise jurisdiction over an absent defendant 'to the full extent permitted by the Due Process Clause.'" *In re R.W.*, 2011 VT 124, ¶ 23, 191 Vt. 108 (quoting *N. Aircraft, Inc. v. Reed*, 154 Vt. 36, 40 (1990)). "Due process allows a forum to assert jurisdiction over a nonresident defendant who has 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id*. Either specific jurisdiction or general jurisdiction can satisfy the constitutional minimum contacts requirement. See *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010) (noting distinction between specific and general jurisdiction for purposes of the minimum contacts inquiry).

---

[2] Hoplite asserts in its motion that this language appears in its Exhibit A. It does not, nor does it appear elsewhere in Hoplite's exhibits. The court will nevertheless presume for present purposes that the language did appear in the draft contract documents that the parties circulated.

2

The court agrees with the University that general jurisdiction is not present here. The University undoubtedly has contacts with Vermont that are typical of any nationally prominent university—e.g., some students come from Vermont, the University's website may be viewed by individuals in Vermont, etc. Such contacts are not the kind of continuous and systematic contacts with Vermont such that Vermont could exercise general jurisdiction over the University. *E.g.*, *Gehling v. St. George's Sch. of Medicine, Ltd.*, 773 F.2d 539, 541–43 (3d Cir. 1985) (no general jurisdiction in Pennsylvania over Grenada, West Indies medical school even though the school solicited students by touring in some Pennsylvania cities and by placing ads in national publications, enrolled some Pennsylvania students, and established a joint program with a Pennsylvania college). Hoplite has not alleged any facts that would support a contrary conclusion.

"Specific jurisdiction exists when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Havill v. Woodstock Soapstone Co.*, 172 Vt. 625, 626 (2001) (mem.) (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567–68 (2d Cir. 1996)). The central question in the specific jurisdiction inquiry is "whether the defendant has purposefully availed itself of the privilege of acting in the forum state." *N. Sec. Ins. Co. v. Mitec Elecs., Ltd.*, 2008 VT 96, ¶ 14, 184 Vt. 303. The purposeful-availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

"The fact that an out-of-state party contracts with a Vermont company does not, by itself, automatically establish sufficient minimum contacts in Vermont to render an assertion of personal jurisdiction constitutional." *Mansfield Heliflight, Inc. v. Heli-One Canada Inc.*, No. 2:12-CV-46, 2012 WL 4479851, at *8 (D. Vt. Sept. 28, 2012) (citing *Burger King*, 471 U.S. at 478). There is no such "mechanical" test for personal jurisdiction. *Burger King*, 471 U.S. at 478. Instead, the court must take a "highly realistic" approach and evaluate a variety of factors including "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . ." *Id.* at 479.

Here, the University entered into no contract with Hoplite at all, and the parties never engaged in any course of dealing—at best the parties engaged in negotiations by email. Had the parties entered into a contract, the musical performances would have occurred in the District of Columbia, Hoplite would have been paid for its services, and subsequently the parties' contractual relationship would have ended—a far cry from the kinds of continuing obligations envisioned by the contract in *Burger King*.

3

The fact that the draft contract circulated among the parties might have included Vermont forum-selection and choice-of-law clauses does not compel a contrary result. Certainly if the University had entered into a contract containing such a clause, it would have effected a waiver of any claim of lack of personal jurisdiction over the University in Vermont. See *Int'l Collection Serv., Inc. v. Gibbs*, 147 Vt. 105, 107 (1986). But such a waiver only occurs when the forum selection clause is enforceable. *Id*. In this case, even though the University apparently did not object to the clause in the course of the negotiations as far as those negotiations proceeded, the University never agreed to any contract.[3]

## ORDER

The University's motion to dismiss (filed Dec. 31, 2012) is granted.

Dated at Burlington this ___ day of February 2013

_____
Geoffrey Crawford,
Superior Court Judge

---

[3] A contrary conclusion would mean that plaintiffs bringing suits related to failed contract negotiations could impose their forum upon unwilling defendants merely by inserting forum-selection and choice-of-law clauses in draft language and later arguing that the defendant did not specifically object during the negotiations.

4