## Claudia R. Dall v. Georgina N. Kaylor, et al.

[658 A.2d 78]

No. 94-143

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed February 17, 1995

*Beth Robinson* of *Langrock Sperry & Wool,* Middlebury, for Plaintiff-Appellant.

*Michael S. Brow* and *Amy E. Sylvester* of *Sylvester & Maley, Inc.,* Burlington, for Defendants-Appellees.

**Morse, J.** Plaintiff Dall appeals the trial court's dismissal of her claim for lack of personal jurisdiction. Dall, a Vermont resident, brought suit in Rutland Superior Court against Maryland defendants for breach of warranty arising from the purchase of a Hanoverian horse. Defendant Baron, a Maryland resident and owner of the horse, hired defendants Kaylor and Westphalian Pride Farm to sell it. Defendant Kaylor, d/b/a Westphalian Pride Farm, is a horse breeder and trainer in Maryland. Defendant Westphalian Pride Farm holds itself out as a breeder and developer of "world-class" Hanoverian horses. The sole issue is whether defendants' contacts with Vermont were sufficient to confer personal jurisdiction in Vermont. The trial court granted defendants' motion to dismiss for lack of jurisdiction. We reverse.

Dall read Westphalian Pride Farm's classified advertisement in a nationally circulated publication, *Chronicle of the Horse*. Westphalian Pride Farm had placed advertisements in *Chronicle of the Horse* over a hundred times since 1990. In September 1992, Dall visited Westphalian Pride Farm in Maryland to view the horses available for sale. Upon her return to Vermont, she communicated with defendants by mail and telephone and ultimately agreed to purchase a horse. In October 1992, Dall mailed a check to defendants as payment for the horse. Defendant Kaylor mailed Dall the completed bill of sale for the horse, a transfer of ownership form and an application for membership in the American Hanoverian Society.

The horse sustained injuries during its trip to Vermont. A veterinarian's treatment of these injuries led to the discovery that the horse suffered from congenital and chronic bone disease in his rear legs.

Vermont's long-arm statute, 12 V.S.A. § 913(b), confers jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause. *Northern Aircraft, Inc. v. Reed*, 154 Vt. 36, 40, 572 A.2d 1382, 1385 (1990); see also Reporter's Notes, V.R.C.P. 4(e) (statute allowing personal service outside state reaches to "outer limits permitted by the due process clause"). The Due Process Clause "protects an individual's liberty interest in not being subject to the binding judgments" of a foreign state with which the individual has no meaningful contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985). A state court may assert jurisdiction and comport with due process where a nonresident defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316

(1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The critical consideration in determining if defendants' activities satisfy the minimum contacts requirement is whether "the defendant's conduct and connection with the forum State are such that [the defendant] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Northern Aircraft*, 154 Vt. at 41, 572 A.2d at 1386. This reasonableness requirement is met when the defendant purposefully directs activity toward residents of a forum state and the litigation arises out of, or relates to, that activity. *Burger King*, 471 U.S. at 472; *Northern Aircraft*, 154 Vt. at 41, 572 A.2d at 1386. The reasonableness requirement also prevents a defendant from being subjected to jurisdiction on the basis of fortuitous, attenuated, or random contacts. *Burger King*, 471 U.S. at 475; *Northern Aircraft*, 154 Vt. at 41-42, 572 A.2d at 1386.

Defendants argue that they did not affirmatively seek to do business with any Vermont resident by placing classified advertisements in a nationally circulated publication and that placement of their ad did not establish minimum contacts with Vermont. They further argue that they did not purposefully direct activity toward Vermont during negotiations with Dall. Defendants rely, in part, upon *Carothers v. Vogeler*, 148 Vt. 316, 532 A.2d 580 (1987), in which this Court found insufficient contacts to confer jurisdiction. In *Carothers*, the Vermont defendant advertised his restored Porsche in a nationally circulated publication and subsequently sold it to the Ohio plaintiff who had seen the advertisement. The plaintiff obtained a judgment in Ohio. When the plaintiff sought to enforce that judgment in Vermont, we held that because defendant's sole contact with Ohio was the advertisement, defendant had not "avail[ed] himself of any benefit or law of Ohio." *Id.* at 319, 532 A.2d at 582. *Carothers*, however, involved the private sale of an automobile by placement of a single advertisement in a nationally circulated publication. The seller was not in the business of selling cars. *Id.* at 317, 532 A.2d at 580.

When, however, sellers intentionally act to advance their commercial interest, they should reasonably anticipate being sued in Vermont if a dispute arises from these activities. *Northern Aircraft*, 154 Vt. at 43, 572 A.2d at 1387. Unlike the defendant in *Carothers*, who did not regularly advertise and sell cars, defendants here were in the business of selling horses; they held themselves out as "breeder[s] and developers of world class registered Hanoverians." Defendants

initiated the resulting business transaction by advertising, more than one hundred times, in a national market that included Vermont.

It is hardly unfair for defendants to defend themselves in jurisdictions where they choose to advertise their products. See *Makopoulos v. Walt Disney World*, 535 A.2d 26, 27-28 (N.J. Super. Ct. App. Div. 1987) (forum state claim resulting from New York television broadcast received in New Jersey was "not only to be anticipated, it was predictable"). As technology and economic practices diminish the importance of geographic boundaries, it is not unreasonable to anticipate the expansion of personal jurisdiction to those who deliberately transcend those boundaries in pursuit of economic gain. See *id.* at 28 (considering personal jurisdiction to be function of contemporary technology and economic practice).

We hold that assertion of personal jurisdiction over defendants will not offend "traditional notions of fair play and substantial justice." See *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987) (requiring consideration of interests of forum state, plaintiff's interest in obtaining relief and burden on defendant). Vermont has a legitimate interest in sanctioning "parties who reach out beyond one state and create continuing relationships and obligations" with Vermont citizens for the "consequences of their activities." *Burger King*, 471 U.S. at 473; see also *Pasquale v. Genovese*, 136 Vt. 417, 419, 392 A.2d 395, 397 (1978) (finding it "equitable to imply submission to jurisdiction" when defendant's conduct was "purposefully directed toward Vermont" and inevitably affected Vermont residents); *Electronic Media Int'l v. Pioneer Communications of Am., Inc.*, 586 A.2d 1256, 1259 (Me. 1991) (affording redress against nonresidents who incur obligations to residents).

Defendants do not argue that Vermont is an inconvenient forum in which to try Dall's claim. It is not too great a burden to defend the breach of warranty claim here, and it may even be easier to litigate damages. See *New Bern Pool & Supply Co. v. Graubart*, 381 S.E.2d 156, 160 (N.C. Ct. App. 1989) (assertion of jurisdiction convenient when potential witnesses available in forum state); see also *Lebel v. Everglades Marina, Inc.*, 558 A.2d 1252, 1258 (N.J. 1989) (finding no burden on nonresident because interstate travel "not qualitatively that different" from travel within state). The horse's diseased condition was discovered in Vermont, and potential witnesses to the horse's condition and expenses incurred are likely to be in Vermont.

*Reversed.*

**Allen, C.J.,** dissenting. The constitutional touchstone for personal jurisdiction is "whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). *Burger King* further instructs that the application of the minimum contacts rule "will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant *purposefully avails* itself of the privilege of conducting activities within the forum State, thus *invoking the benefits and protections of its laws.*" *Id.* at 475 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)) (emphasis added).

The Court added, in language appropriate to the present facts:

> This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, or of the "unilateral activity of another party or a third person." Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum State. Thus where the defendant "deliberately" has engaged in significant activities within a State, or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Id.* at 475-76 (emphasis in original; citations omitted).

I fail to see how the placement of an advertisement in a national publication, without more, is an act purposefully directed at Vermont. See *Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 112 (1987) (O'Connor, J., plurality, joined by Rehnquist, C.J., Powell, Scalia, JJ.) (placement of product into stream of commerce without more is not an act of defendant purposefully directed toward forum state); see also *Burger King,* 471 U.S. at 476 (defendant's action must be purposefully directed at forum state or citizens of forum state); *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980) (mere foreseeability that defendant's product will be purchased by consumer in forum state insufficient for jurisdictional purposes). We said as much in *Carothers v. Vogeler,* 148 Vt. 316, 319,

532 A.2d 580, 582 (1987) (defendant did not avail himself of privileges of the state by advertising in national publication).

The majority attempts to distinguish *Carothers* on grounds that the present defendants advertised not just once, but "more than one hundred times" in a national publication, and that the circulation of this national publication included Vermont. We have consistently examined the quantity of activity within Vermont as a factor in determining the quality and nature of activity required to make it reasonable for a defendant to conduct its defense in a foreign state. See *id.*; *Hanson v. Denckla*, 357 U.S. at 251; *International Shoe Co.*, 326 U.S. at 319. The frequency of an activity does not, however, alter the nature of that conduct or convert it into conduct deemed to be directed at the citizens or state of Vermont. As of today, national advertising, an activity *not* regarded by its nature as directed at the state, is deemed to be so because of the number of times it is repeated.

Defendants either availed themselves of the "benefits and protections" of Vermont's laws, or they did not. It should make no difference under the principles of *Burger King*, *Hanson v. Denckla*, and *Asahi Metal Industry Co.* whether defendants advertised once or a hundred times. The majority opinion subjects one advertising a product in the national media to personal jurisdiction in this state regardless of the fact that there are no other Vermont contacts. This exercise of jurisdiction exceeds the limits imposed by the Due Process Clause of the Fourteenth Amendment.

I am authorized to say that Justice Dooley joins in this dissent.