Fitzgerald v. Baker, No. S1566-04 CnC  (Norton, J., Jan. 25, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]


STATE OF VERMONT                                              SUPERIOR COURT
Chittenden County, ss.:                                  Docket No. S1566-04 CnC


DANIEL AND TINA FITZGERALD

v.

WAYMAN AND KRISTI BAKER


ENTRY

The Fitzgeralds have sued the Bakers for fraud, intentional misrepresentation, and consumer fraud based on a defective horse that the Fitzgeralds bought from the Bakers. The Bakers, who reside in Missouri, request that the court dismiss this case for lack of personal jurisdiction pursuant to V.R.C.P. 12(b)(2). The Fitzgeralds, Vermont residents, argue that the Bakers' contacts with Vermont are sufficient through their advertising on the internet, which, by its nature, is disseminated throughout the country. Moreover, the Fitzgeralds argue that personal jurisdiction is reasonable in this case. The court agrees and denies the Bakers' motion.

The following facts are based on the complaint, as well as affidavits and supporting documents filed by the parties. The Bakers own and operate "WK Paint and Quarter Horses," which breeds and sells horses. On their website, they hold themselves out to be premium horse breeders, stating, "WK Paint and Quarter Horses Strives to produce the BEST Paint Horses possible. Breeding for the elusive Superior All-around Paint Horse, we concentrate on Quality, not Quantity." The website also states that Wayman Baker has trained and shown horses for more than 30 years. In addition to taking bids for horses on their website, they also sell horses by posting advertisements on

websites dedicated to trading horses, including Dreamhorse.com and Equine.com. The Bakers have placed

several such advertisements on these sites. In addition to the sale in this case, they have also sold horses to buyers in Texas and Kansas, as well as in Missouri.

Breeding and selling horses is not the Bakers' sole business. Mr. Baker also owns the American Fence Company, which installs residential and commercial fencing in southeast Missouri. Kristi Baker has taught high school art.

The transaction that gave rise to this action began when the Fitzgeralds saw an advertisement for a horse that the Bakers placed online. The Fitzgeralds communicated with the Bakers by phone and e-mail about the horse. At this time, the Bakers allegedly made representations about the horse that form the basis of the Fitzgeralds' claims. The Fitzgeralds eventually traveled to Missouri in March 2004 to inspect the horse and consummate the transaction. The Fitzgeralds then took the horse into their possession in Missouri and transported it back to Vermont.

In May 2004, the horse died, allegedly as a result of complications related to a genetic defect. The Fitzgeralds discovered this defect through lab testing in California. They then initiated this suit. The Bakers argue that their single advertisement of the horse on a website did not demonstrate sufficient contacts with Vermont to provide for personal jurisdiction over them in this action.

Vermont's long-arm statute confers jurisdiction over nonresidents to the full extent permitted by the Due Process Clause. Dall v. Kaylor, 163 Vt. 274, 275 (1995). The court therefore applies federal constitutional standards in assessing personal jurisdiction over nonresidents. Such jurisdiction comports with due process "where a nonresident defendant has 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940))). The "critical consideration" in determining whether a defendant's activities satisfy the minimum contacts requirement is whether "'the defendant's conduct and connection with the forum State are such that [the defendant] should reasonably anticipate being haled into court there.'" Id. at 276 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). Additionally, "[i]t is essential to a finding of personal jurisdiction that a defendant 'purposefully avails

itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Schwartz v. Frankenhoff, 169 Vt. 287, 293 (1999) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).

The Vermont Supreme Court has applied different standards to private individuals and commercial entities. In Dall, for example, the Court held that a party in the business of selling horses has enough conduct in and connection to Vermont to satisfy the minimum contacts requirement where the party had placed more than 100 advertisements in a nationally circulated publication and had held itself out to be a premium horse breeder. 163 Vt. at 275–77. "When . . . sellers intentionally act to advance their commercial interest, they should reasonably anticipate being sued in Vermont if a dispute arises from these activities." Id. at 276. In Carothers v. Vogeler, 148 Vt. 316, 319 (1987), however, the Court held that an individual who is not in the business of selling cars and who sold a single car by placing one advertisement in a nationally distributed journal did not have requisite contacts with the buyer's forum state.

Here, the Bakers are more involved in horse breeding and selling than the private seller in Carothers, but they do not appear as involved in the business as the horse farm in Dall, especially considering their involvement in other, non-horse-related employment. This action therefore falls somewhere between those two cases. The nature of the Baker's activities and representations, however, sufficiently tilts the scale in favor of personal jurisdiction. Although the Bakers suggest that breeding and selling horses is something of a personal pastime for them, it is apparently important enough to place multiple advertisements on websites that have a national reach and to run their own website. It has also led to sales in two other states outside of their home state of Missouri. The Bakers hold themselves out as experienced breeders who raise premium horses, which suggests that their activities are more commercial than those of a private enthusiast, like the seller in Carothers. Given their status as a commercial entity, their use of an advertisement with a national reach and their communication with an out-of-state buyer were both intentional acts to advance their commercial interests. They could reasonably anticipate litigation in states other than Missouri from these acts. Their activities therefore constitute sufficient minimal contacts with and purposeful availment to Vermont to provide for this court's personal jurisdiction over them.

In addition to minimum contacts, courts must also consider whether the exercise of personal jurisdiction "is reasonable and will not offend International Shoe's

3

'traditional notions of fair play and substantial justice.'" <u>N. Aircraft v. Reed</u>, 154 Vt. 36, 42 (1990) (quoting <u>Asahi Metal Indus. v. Super. Ct. of Calif.</u>, 480 U.S. 102, 113 (1987)). Accordingly, courts must balance the burden on the defendant against the interests of the forum State and the plaintiff's interests in obtaining relief. <u>Id</u>. Additionally, the court must consider the interstate judicial system's interest in obtaining the most efficient resolution of controversies. <u>Id</u>. The Vermont Supreme Court has recognized that "[a]s technology and economic practices diminish the importance of geographic boundaries, it is not unreasonable to anticipate the expansion of personal jurisdiction to those who deliberately transcend those boundaries in pursuit of economic gain." <u>Dall</u>, 163 Vt. at 277.

Here, both parties would suffer significant burdens if forced to leave their respective residencies to litigate this action. Therefore, their interests balance out. But Vermont's interests weigh in favor of a holding that personal jurisdiction is reasonable in this case, given that "Vermont has a legitimate interest in sanctioning 'parties who reach out beyond one state and create continuing relationships and obligations' with Vermont citizens for the 'consequences of their activities.'" <u>Id</u>. (quoting <u>Burger King</u>, 471 U.S. at 473). It also appears that much of the evidence related to damages may be located in Vermont. Although the Bakers ascertained the horse's genetic condition through lab testing in California, the complications that arose as a result of this condition occurred in Vermont.

Furthermore, the Baker's use of the internet to sell their horses represents exactly the type of technological and economic practice that diminishes the importance of geographic boundaries and expands personal jurisdiction. Thus, the interstate judicial system's interest in obtaining efficient resolution of controversies is satisfied by holding that personal jurisdiction exists here.

ORDER

For the foregoing reasons, the Bakers' motion to dismiss is DENIED.

Dated at Burlington, Vermont, January 25, 2005.

_____/s/_____

4

Richard W. Norton      Judge