State v. Makedonija Tabak 2000, No. 327-7-04 Wncv (Toor, J., Nov. 18, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT
WASHINGTON COUNTY, SS

| | |
|---|---|
| STATE OF VERMONT,<br>  Plaintiff<br><br> v.<br><br>MAKEDONIJA TABAK 2000 and<br>LEADER TOBACCO CO., INC.,<br>  Defendants | SUPERIOR COURT<br>Docket No. 372-7-04 Wncv |

RULING ON MOTION FOR SUMMARY JUDGMENT

This case is brought by the State against two defendants: a tobacco manufacturer and a tobacco importer. The importer, Leader Tobacco Co., Inc. (Leader), has moved for summary judgment. The State has filed a cross-motion for partial summary judgment. Oral argument took place on November 9.

Relevant Facts

For purposes of the summary judgment motions, the relevant facts are undisputed. They are as follows. Vermont law requires that all tobacco manufacturers who are not signatories to a Master Settlement Agreement (entered into in 1998 by leading United States tobacco manufacturers) must take certain steps to permit their cigarettes to be sold within the State. 33 V.S.A. §§ 1913-1914. In this case, the necessary steps were to report all sales within the State

and to deposit a certain percentage of profits in an escrow account to be held for twenty-five years by the State. Id. § 1914(a)(2) and (c). The purpose of the fund is to pay any future judgments or settlements in certain cases that may be brought by the State. Id. § 1914(b)(1). The manufacturer receives the interest on the account, and if no judgments or settlements are paid out of it within twenty-five years, the entire fund reverts to the manufacturer. Id. § 1914((b).

The manufacturer in this case is a Macedonian company by the name of Makedonija Tabak 2000 (MT 2000).[1] The complaint alleges that MT 2000 failed to report year 2003 sales of one brand of its cigarettes, Primo Cigarettes, and failed to pay the required funds into escrow for those cigarettes.

Leader is a company that imports cigarettes into the United States, then passing them on to distributors. Leader did import Infinity brand cigarettes manufactured by MT 2000. However, it never imported Primo brand cigarettes. It did, however, enter into an agreement with MT 2000 whereby it would file the required reports with all states and make the required deposits into escrow with regard to the MT 2000 cigarettes it imported.

The agreement between Leader and MT 2000 was documented in a power of attorney (POA). Affidavit of Andre Maman, Exhibit A. The POA specifies that it is entered into "solely for the purpose of funding, establishing and maintaining bank accounts wherein LEADER will be the sole signatory on these accounts and for the purpose of prosecuting and/or defending any legal actions brought by or against the states or any other person or entity to obtain, protect, recover or release monies from these accounts . . ." Id. p.2. The POA requires Leader to set aside funds for deposit into escrow at the time they make any payments to MT 2000 for cigarettes, and to transfer those funds into escrow accounts at the time required by the Master Settlement

---

[1] Although the State suggests in its papers that MT 2000 has been served and has defaulted, the court has not found proof of service in the file. The court gathers from oral argument that MT 2000 no longer exists. The court therefore requests that the State clarify the situation by the filing of an appropriate motion.

Agreement. Id. ¶ 7(A) and (B). For its services to MT 2000, Leader will be entitled to the interest on the accounts and any reverted monies at the end of the twenty-five year period. Id. ¶ 7(C). MT 2000 warranted to Leader that it had not previously manufactured any cigarettes that were sold in the United States and thus had no outstanding escrow liabilities. Id. ¶ 9(C). It further warranted that "it shall manufacturer (sic) no cigarettes to be sold in the U.S.A. for which the . . . escrow liability to any state has not been paid." Id.

The POA went on to state that Leader was acting as an independent contractor rather than as an employee of MT 2000, and that "MT -2000 has not given LEADER, and LEADER is not accepting any authority for LEADER to operate as MT-2000's agent in any respect except for the limited purpose expressly set forth herein." Id. ¶ 11. Further, the POA states that Leader was not "accepting any of MT-2000's liability under the MSA or the escrow laws of any state." Id.

The POA states that it shall be construed in accordance with the laws of the State of Florida, and that any suit arising out of it "may be commenced and maintained in any court of competent subject matter jurisdiction in Miami-Dade County, Florida . . ." Id. ¶ 14.

Pursuant to the POA, in July of 2003, a certification signed by Leader was submitted to the State by MT 2000. Yessne Affidavit, Ex. 1. The certification was submitted for the purpose of having MT 2000 added to the State's "approved [cigarette] vendor" list. Id. After requesting a copy of the POA, the State accepted Leader's signature on the required year 2003 certification for Infinity brand cigarettes manufactured by MT 2000. That and the subsequent certification, filed in October 2003, indicate that they are signed by Leader "pursuant to power of attorney." Affidavit of Dinah Yessne, Exhibits 1 and 4. Each lists the various types of Infinity cigarettes, identifies MT 2000 as the manufacturer, states that none of the cigarettes were sold in Vermont in the preceding year, and certifies that MT 2000 is in compliance with the Vermont statute. Id.

Although Leader did not import the Primo cigarettes that are the subject of this case, over two million cigarettes imported by Leader from other manufacturers were sold in Vermont in the period 2003-2005. State's Statement of Material Facts ¶ 32 and Yessne Aff. Exhibits 6-8.

## Legal Issues

The motions raise a number of issues. The court will first address the jurisdictional issues, then the substantive issues.

### 1. Jurisdictional Issues

### A. Personal Jurisdiction

Leader argues that Vermont does not have personal jurisdiction over it because it does not have the requisite minimum contacts with the state. Specifically, Leader argues that although it did file certifications in Vermont in 2003 related to Infinity cigarettes, in fact no such cigarettes manufactured by MT 2000 were sold in the State that year. They do concede that Infinity cigarettes imported by them but manufactured by a different company were sold in Vermont, and that many other cigarettes they imported from other manufacturers were sold in Vermont in the period 2003-2005. They argue that their actions in filing the 2003 certifications are insufficient to establish personal jurisdiction.

The court disagrees. This case arises as a result of Leader's certification to the State in 2003 regarding MT 2000 cigarettes. Leader affirmatively chose to make the certification on MT 2000's behalf, for the purpose of having MT 2000 cigarettes approved for sale in Vermont. Yessne Affidavit Exhibit 1. Leader did so to advance its own commercial interests, so that it could import MT 2000 cigarettes for sale in Vermont. Regardless of whether they ultimately sold the MT 2000 cigarettes or not, to the extent that the States' claim arises out of that certification,

4

personal jurisdiction lies. When "sellers intentionally act to advance their commercial interest, they should reasonably anticipate being sued in Vermont if a dispute arises from these activities." Dall v. Kaylor, 163 Vt. 274, 276 (1995).

## B. The Forum Selection Clause

Leader points to the forum selection clause of the POA as restricting disputes over the POA to Florida courts. However, even assuming without deciding it that such a clause would be controlling on a third-party beneficiary claim under the document, that clause merely states that any suit arising out of it "*may* be commenced and maintained in any court of competent subject matter jurisdiction in Miami-Dade County, Florida . . ." Id. ¶ 14 (emphasis added). May does not mean must. Parker v. Gorczyk, 170 Vt. 263, 279 (1999)(generally "the plain, ordinary meaning of the word 'may' indicates that it is discretionary and not mandatory."). Thus, the language of the POA does not bar this court from hearing the case.

## 2. Substantive Issues

The statute does not expressly create liability for importers such as Leader.[2] Instead, it holds only *manufacturers* liable for failing to comply with its dictates. The State argues, however, that by taking on the responsibility for filing the certifications and funding the escrow accounts on MT 2000's behalf, and by entering into the POA, Leader "stands in the shoes" of MT 2000 and can be held liable as if it were a manufacturer. The State further argues that the State is the third party beneficiary of the POA and thus can enforce it against Leader.

## A. The "Stands in the Shoes" Argument

---

[2] There is one exception to this, not applicable here, for importers of cigarettes "that the manufacturer does not intend to be sold in the United States." 33 V.S.A. § 191(9)(A)(ii).

The problem with the "stands in the shoes" argument is that the State offers no legal theory to support it. When pressed at oral argument, counsel could offer no legal doctrine that applies here. The State disclaims reliance upon an agency theory, but the court can see no other doctrine that might apply. Leader took on a contractual obligation to discharge certain responsibilities of the manufacturer, and disclosed when it did so that it acted as agent for MT 2000.This is a classic agency relationship. The State does not dispute Leader's argument that under agency law, the agent cannot be held liable on these facts. *See, e.g.*, Katara v. D.E. Jones Commodities, Inc., 835 F. 2d 966, 972 (2nd Cir. 1987) (in contract claims where agent's role was clear, "the agent will not be personally bound unless there is clear and explicit evidence of the agent's intention to be so bound.")(citation omitted).

Lacking any legal theory on which to adopt the State's claim, the court cannot find a basis on which to find that Leader, merely because of its certifications on behalf of MT 2000, can be liable for MT 2000's alleged violation of the statute.

## B. The Third Party Beneficiary Argument

The State's second argument is that Vermont is a third-party beneficiary under the POA and thus can enforce it against Leader. There are two flaws in this argument.

First, the POA itself states that Leader was not "accepting any of MT-2000's liability under the MSA or the escrow laws of any state." POA ¶ 11. The intent of the parties was expressly *not* to give states the right to use the POA as Vermont now seeks to do. Therefore, even if the State is correct that there is a presumption of intent to benefit when a third party is benefited, here any such presumption is rebutted by the language of the document. Hialeah

<u>Hospital Inc. v. Raventos</u>, 425 So.2d 1205, 1206 (Fla. Dist. Ct. App. 1983) (noting that the presumption in that case was unrebutted).[3]

Second, there is nothing in the POA that gives the State what it seeks here. Nowhere in that document does it say "Leader will pay into escrow fees for MT 2000 cigarettes it did not even know were sold in Vermont." Nowhere does it say "Leader will assure all of MT 2000's legal obligations even for cigarettes it did not import." All it says is that to the extent Leader does import MT 2000 cigarettes, it will be responsible for paying the escrow funds. Here, it is undisputed that Leader did not import the Primo cigarettes. Thus, even assuming *arguendo* that the State is a third-party beneficiary of the POA, it creates no obligation that helps the State in this case.

Order

For the foregoing reasons, Leader's motion for summary judgment is granted and the State's cross-motion for summary judgment is denied. The State is directed to file an appropriate motion with regard to the status of the remaining defendant (MT 2000) by December 5.

Dated at Montpelier this 18th day of November, 2005.

_____
Helen M. Toor
Superior Court Judge

---

[3] Both parties agree that Florida law applies to this question based on the choice of law language of the document.