*State v. Miller*, No. 689-11-16 Wncv (Teachout, J., Aug. 30, 2018).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Washington Unit** | **Docket # 689-11-16 Wncv** |

**STATE OF VERMONT**
     **Plaintiff**

**v.**

**ADRIAN MILLER et al.**
     **Defendants**

### DECISION
### Motion to Dismiss filed November 30, 2016 (Personal Jurisdiction)

In this suit, the State claims that Adrian Miller and three corporate entities, Travel Supplier of America Inc. (TSA), Start 2 Finish Travel Management Inc. (S2F), and Universal Concepts Inc. (Universal), violated Vermont's Consumer Protection Act in the course of selling travel club memberships in Vermont in the fall of 2013. Mr. Miller, S2F, and Universal responded to the complaint by filing a motion to dismiss for lack of specific personal jurisdiction. They assert that it was only TSA that sold memberships in Vermont and that they had no contacts with Vermont but were always located in Texas and merely provided "back office" services to TSA. The State opposed dismissal, essentially asserting that Mr. Miller, S2F, and Universal were all part of the TSA operation.

The court provided for discovery on the jurisdictional issue and held an evidentiary hearing on jurisdiction on August 7, 2018. The State was represented by James Layman, Esq. Mr. Miller, S2F, and Universal were represented by David Bond, Esq. Daniel Richardson, Esq., was present on behalf of TSA, which has not sought dismissal on personal jurisdiction grounds, nor opposed the other defendants' motion.

### Findings of Fact

Based on the evidence, the court makes the following findings of fact:

Adrian Miller, a resident of Texas, is the sole owner of Viva Vacations, which is the sole owner of the two corporate entities challenging jurisdiction: S2F and Universal. S2F was incorporated in 2009. It is no longer in business but at one point had 12–15 employees and between 10–20 clients. Its activities are described below. Universal has no independent staff and is the corporate entity that owns a credit card processing machine used by S2F.

TSA is a company that was, during 2013, in the business of selling memberships in discount travel clubs in several states. In the fall of 2013, TSA came to Vermont and rented hotel rooms to make presentations and sell travel club memberships. The State has sued TSA,

but in addition has sued Adrian Miller, S2F, and Universal for various violations of Vermont's Consumer Protection Act. The State alleges that they were involved in TSA's business in Vermont. Mr. Miller, S2F, and Universal claim that they were not involved in TSA's business activities in Vermont, but merely provided contracted bookkeeping and other office services from Texas.

The evidence shows that Adrian Miller, S2F, and Universal were actually involved in the day-to-day operations of TSA's effort to sell memberships in Vermont. Adrian Miller had given TSA authority to use his personal credit card for the booking in Vermont of hotels to rent presentation space and for lodging for employees while in Vermont. His card was used for this purpose several times in October and on November 5th of 2013. In exchange, he received the benefit of the miles that accrued from such use of the card.

At one of the hotel presentations in Vermont, it was discovered that someone from the Vermont Attorney General's office was in the lobby. Adrian Miller personally made the decision to withdraw from engaging in any further business in Vermont. This demonstrates the level of his authority with respect to where TSA did business, including whether or not to do business in Vermont.

S2F had a Bank of America bank account that was used to book and pay for lodging in Vermont during that same TSA selling period in Vermont. An S2F checkcard was used to pay for bookings on behalf of TSA. Neither Adrian Miller nor S2F ever billed TSA directly with an itemized bill for the amounts charged against either the Miller credit card or the S2F account.

Rather, under the business model between S2F and TSA, when customers purchased a travel club membership with a credit card, S2F collected the funds using a credit card processing machine owned by Universal, which had no employees or staff of its own and no other activities. When customers paid by check, S2F collected the funds and placed them in an account it managed for TSA. S2F then used those funds to pay bills for TSA such as for promotional materials. It also kept for itself, from those funds, fees attributable to management, accounting, and merchant services. It did in fact do all S2F's bookkeeping and other financial services, including challenging credit card chargeback requests and preparing financial statements. However, it did not generate bills to TSA for this work. Rather, its fee was 2% of sales: it simply kept 2% of sales for itself and paid the net over to TSA. In addition, it covered debts and expenses of TSA, thereby extending it credit to further its business. This is explicit in an email authored by Adrian Miller, which also addresses issues of product improvement.

This is not a typical situation in which TSA operated and managed its own business and contracted for, was billed for, and paid for bookkeeping and accounting services. Rather, S2F was responsible for significant financial transactions on behalf of TSA without ever billing TSA. It processed and held all of customer sales funds and exercised discretion over the use of Adrian Miller's and S2F's credit sources to pay expenses. Adrian Miller and S2F sought to advance TSA's business by extending credit to it, and Adrian Miller exercised decisionmaking over where TSA held events to sell memberships. S2F's "fee" was a percentage of sales. All of these practices reflect an enmeshed business relationship in which Adrian Miller, S2F, and Universal were all engaged in promoting and working with TSA in the nature of a joint venture to generate

2

business profits for the benefit of all.  In the fall of 2013, they did this in Vermont.

## Conclusions of Law

The Vermont Supreme has described the basic personal jurisdiction inquiry as follows.

A state court may assert [specific personal] jurisdiction and comport with due process where a nonresident defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  The critical consideration in determining if defendants' activities satisfy the minimum contacts requirement is whether "the defendant's conduct and connection with the forum State are such that [the defendant] should reasonably anticipate being haled into court there."  This reasonableness requirement is met when the defendant purposefully directs activity toward residents of a forum state and the litigation arises out of, or relates to, that activity.  The reasonableness requirement also prevents a defendant from being subjected to jurisdiction on the basis of fortuitous, attenuated, or random contacts.

*Dall v. Kaylor*, 163 Vt. 274, 275–76 (1995) (citations omitted).  "'The limits imposed on state jurisdiction by the Due Process Clause . . . have been substantially relaxed over the years'—a 'trend' that is 'largely attributable to a fundamental transformation in the American economy' resulting from an ever-increasing nationalization of commerce."  *State v. Atl. Richfield Co.,* 2016 VT 22, ¶ 13, 201 Vt. 342 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292–93 (1980)).  Because the matter was addressed on the merits at an evidentiary hearing following targeted discovery, the burden of proving personal jurisdiction by a preponderance of the evidence is on the State.  See 4 Wright & Miller et al., Federal Practice & Procedure: Civil 4th § 1067.6 n.4.

Mr. Miller, S2F, and Universal characterize themselves as merely providing "back office" services to an unrelated and independent corporation, TSA.  TSA, they suggest, is uniquely responsible for any contacts with Vermont, not them.  This characterization of the business relationships among these actors does not have credible evidentiary support.  Instead, the facts are clear that Mr. Miller controlled S2F and Universal and exerted significant control over TSA and its functioning, including where and how it did business and the extent to which it was supported by the extension of credit.  When it became clear that the Vermont Attorney General's Office was interested in TSA's activities in Vermont, it was Mr. Miller personally who decided that TSA would abandon the Vermont marketplace.

There was no evident separateness or observance of corporate formalities between TSA and Mr. Miller and the other entities.  There is no meaningful evidence of any contract with TSA for services.  TSA freely used Mr. Miller's personal and corporate financial accounts.  There were no bills sent to TSA for services rendered or commissions earned.  Mr. Miller, personally and through S2F and Universal, functionally controlled TSA.  Mr. Miller, S2F, and Universal reasonably should have anticipated being haled into court in Vermont based on the sale of travel memberships in Vermont by, nominally, TSA.  TSA, at most, was acting as one of the

3

"departments" of Mr. Miller's larger travel membership enterprise. 4A Wright & Miller et al., Federal Practice & Procedure: Civil 4th § 1069.4. That these defendants might be held accountable by the State in an action brought pursuant to the Vermont Consumer Protection Act in Vermont should have come as no surprise. The minimum contacts standard is satisfied, and no defendant argues that personal jurisdiction in Vermont is unfair for other reasons.

Based on the evidence presented, this court has personal jurisdiction over Defendants Adrian Miller, S2F, and Universal for purposes of the subject matter of this case.

ORDER

For the foregoing reasons, Defendants' Motion to Dismiss is *denied*.

The attorneys shall submit a stipulated proposed pretrial scheduling order by September 21, 2018.

Dated at Montpelier, Vermont this _____ day of August 2018.

_____
Mary Miles Teachout
Superior Judge