Filed 11/13/25

VERMONT SUPERIOR COURT
Washington Unit
65 State Street
Montpelier VT  05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 25-CV-01214

---

BRENDAN O'REILLY et al v. MICHAEL PHILLIPS et al

---

## DEFAULT JUDGMENT

The present matter concerns a series of partnership agreements and loans made by Plaintiffs Brendan O'Reilly and South Peak Properties, LLC to Defendant Michael Phillips and entities owned and controlled by Phillips.  Plaintiffs filed the present matter on March 19, 2025 with a verified complaint. Defendants were served on May 22, 2025.  To date, neither Phillips, nor any of the named entities have answered the complaint, filed a dispositive motion, entered a notice of appearance, or otherwise sought to assert any defenses or rights in this matter.

Plaintiffs filed a motion for default judgment under V.R.C.P. 55 on October 7, 2025. The Court set this motion for a hearing on November 10, 2025 and took testimony from Brendan O'Reilly and John Lupien.  Based on the testimony of the parties, the exhibits submitted into evidence at the hearing, and Plaintiffs' underlying documentation in support of its motion for default judgment, the Court makes the following findings and conclusions.

### Findings of Fact

1. Brendan O'Reilly is a resident of Stowe, Vermont.  He, along with John Lupien, who also resides in Stowe, Vermont, owns South Peak Properties, LLC, a Vermont limited liability company, with a principal place of business in Waterbury, Vermont.

2. South Peak Properties, LLC owns and develops real estate and constructs what it characterizes as high-end homes and improvements.

3. O'Reilly met Defendant Michael Phillips in the early 2000s when Phillips purchased property in Stowe, Vermont.  Phillips hired O'Reilly and South Peak Properties, LLC to do construction work and improvements on the property.  The relationship worked favorably.  Phillips liked O'Reilly's work, and O'Reilly and his company were paid for the work done.

4. While Phillips spent time in Stowe and used the property there, he was at all times a resident of North Reading, Massachusetts and his primary investments were in that State, particularly several developments on Martha's Vineyard.

5. Around 2008, Phillips sold his Stowe property, but he continued to communicate with O'Reilly and kept up their relationship.

6. In 2015, Phillips contacted O'Reilly, while O'Reilly was living and working in Vermont, and proposed an investment to O'Reilly and South Peak Properties, LLC for two properties on Martha's Vineyard. In each case, O'Reilly and South Peak Properties, LLC would invest both capital and construction into the property and would be paid for their work and when the properties were sold. Each property would be owned by a separate LLC of which South Peak Properties, LLC would be a part-owner.

7. The first company formed was MVKP, LLC. It was until 2021, a manager-managed Massachusetts LLC with two managers—South Peak Properties, LLC and Michael P. Phillips,

8. As part of the formation of this LLC, O'Reilly and South Peak Properties, LLC sent Phillips $300,000 from their Vermont bank account on June 1, 2015. This transfer was confirmed as received by Phillips' bank.

9. According to the May 2015 bylaws, the two managers, South Peak Properties, LLC, and Phillips, were obligated to act jointly to execute, acknowledge, deliver, and record any instrument affecting an interest in real property; profits and losses are shared 50/50, with a mandatory distribution waterfall that upon sale of the company's real property (a parcel in Edgartown, Massachusetts on Mullen Way, known as Lot A) would first re-pay $300,000.00 to South Peak for its capital investments, then any debts, with any remaining funds divided equally, and Phillips obligated to contribute if proceeds are insufficient. Ex. 1 (MVKP Operating Agreement).

10. Following this agreement, South Peak Properties, LLC began construction work on the Lot A. O'Reilly credibly testified that they were paid for the bulk of this work, but by 2017, they had incurred approximately $170,000 in work and materials that remained unpaid.

11. The second LLC was established under similar terms. 12 Greenleaf, LLC was, until 2021, a manager-managed Massachusetts LLC with three managers—South Peak Properties, LLC, Brendan P. O'Reilly, and Michael P. Phillips.

12. As part of the formation of this LLC, O'Reilly and South Peak Properties, LLC sent Phillips $168,000 from their Vermont bank account on December 15, 2015. This transfer was also confirmed as received by Phillips' bank.

13. According to the December 2015 bylaws, the three managers, South Peak Properties, LLC, O'Reilly, and Phillips, were required to act jointly for recordable real property instruments. Upon the sale of the property, at 12 Greenleaf Avenue in Oak Bluffs, Massachusetts, the parties would share profits with the initial re-payment of the $168,000.00 amount to South Peak Properties, LLC to be made first, followed by any debts, and the remainder distributed according to membership interests, and Phillips obligated to contribute if proceeds are insufficient. Ex. 4 (12 Greenleaf Operating Agreement).

14. On December 8, 2017, MVKP, LLC conveyed its Mullen Way Lot A property "with the buildings thereon" to Mark and Jennifer McGreenery for $2,600,000.00. Ex. 2 (MVKP to McGreenery Deed). South Peak Properties, LLC did not approve this sale and had no knowledge that the sale was occurring until after the closing, in derogation of the parties' operating agreement.

15. Phillips did not distribute any of the proceeds from the MVKP, LLC property sale to South Peak Properties, LLC in derogation of the parties' operating agreement.

16. On February 26, 2018, 12 Greenleaf, LLC conveyed 12 Greenleaf Avenue (three lots with buildings thereon) to Kevin and Gail Myatt for $815,000.00. Ex. 5 (12 Greenleaf Sale Deed). Again, O'Reilly and South Peak Properties, LLC were unaware of this transaction until it was closed in derogation of the parties' operating agreement.

17. Philips did not distribute any of the proceeds from the 12 Greenleaf, LLC property sale to either O'Reilly or South Peak Properties, LLC. In derogation of the parties' operating agreement.

18. The evidence indicates that Phillips kept the proceeds of both the MVKP, LLC and 12 Greenleaf, LLC sales entirely to himself.

19. In addition to these real estate dealings, O'Reilly and South Peak Properties, LLC continued to do construction work for Phillips. Plaintiffs has shown that they did $104,589.75 worth of work for Phillips related to a property known as Lot 9—Jordan Way in Martha's Vineyard. This invoice was sent on January 12, 2017. It has never been paid.

20. Throughout this period, Phillips assured O'Reilly and Lupien through emails and phone calls that the lack of payment for the real estate and for the construction work was simply due to a series of business issues, and that they would be paid as soon as the money became free.

21. O'Reilly and Lupien accepted these representations as it is not uncommon for real estate developers to run short of funds in the middle of a project or series of projects, and they took Phillips at his word.

22. In January 2018 emails between Phillips, O'Reilly, and Lupien, Plaintiffs proposed crediting all prior investments and outstanding balances related to the prior investments toward the outright purchase of Lot 4. Phillips replied in agreement and acknowledged the amounts due including $168,000 for the Greenleaf property, $300,000 for the Mullen (MVKP, LLC) property, $170,000 for work on the Mullen Property. These amounts totaled $638,000.

23. The parties further negotiated that once these credits were applied, then O'Reilly and South Peak Properties, LLC would still pay $200,000 for the lot. The parties agreed that Plaintiffs would pay $100,000 when they closed on the property, and $100,000 when Plaintiffs sold the property. These establishing a minimum agreed sum of $610,000.00 due to Plaintiffs. Ex. 18 (Settlement Emails).

24. On February 15, 2018, in furtherance of these assurances and agreements, Katama South Holdings, LLC, an Massachusetts limited liability company owned and controlled by Phillips entered into a purchase and sale agreement with Peak Properties LLC 11 Jordan Way (Lot 4) for $800,000.00, crediting Plaintiffs' prior investments: "$300,000.00 land purchase funds, $130,000.00 construction funding" from Mullen, "Proceeds from sale of building lot at 12 Greenleaf … $170,000.00," plus $100,000.00 at closing and $100,000.00 within eighteen months interest-free (thereafter 5%). Ex. 6 (Lot 4 P&S). The closing was scheduled to take place 45 days after receipt of marketable title.

25. Before the parties could close on the Jordan Way property, the lot went into foreclosure, and it was eventually transferred to Warrior Capital Corporation on October 14, 2020. Exhibit 7.

26. On June 30, 2021, MVKP, LLC and 12 GREENLEAF LLC were involuntarily dissolved by the Massachusetts Secretary of the Commonwealth. Ex. 8 (MVKP summary); Ex. 9 (12 Greenleaf summary). Plaintiffs were unaware of these dissolutions and were not notified by Phillips of his intent to dissolve the LLCs.

27. During this time, Philips continued his promise to pay and requested O'Reilly and South Peak Properties, LLC not to file any action against him. Phillips continued to state his non-performance was due to shortages and balancing on-going investments.

28. O'Reilly and Lupien took Phillips at his word and based on their long history continued to trust his promises to pay that continued through 2025 when Plaintiffs filed the present action.

29. Plaintiffs delayed filing suit because Phillips repeatedly proposed new plans to repay them throughout 2020 to 2024. After being served, Phillips communicated with O'Reilly and urged him to slow the case. As incentive, Phillips promised at that time to sign a new note memorializing his existing obligations. At the last minute, Phillips refused to sign the note. Shortly thereafter, Plaintiffs learned of the 2021 dissolutions and proceeded with the present motion for default judgment.

## Conclusions of Law

A party may file a motion for default judgment at any time in a case after the opposing party has been served and the time for filing their responsive pleading has passed. V.R.C.P. 55(a). Following this motion, the Court shall conduct an evidentiary hearing on the amounts sought due as part of the claim when the amounts are not for a sum certain or for other reasons. V.R.C.P. 55(c)(3). In this case, the Court set the present matter for a hearing as Plaintiff's affidavits did not entirely describe the nature of the parties' business relationships, the reasons for the delay in payments, and how the amounts sought by Plaintiffs were calculated. Following the November 10th hearing, the Court finds that Plaintiffs have satisfied their evidentiary burden and that the Court may analyze these claims for the purpose of default judgment.

As a preliminary matter, the Court has considered the question of jurisdiction. Defendant Phillips is a Massachusetts resident, and at the time of the underlying agreements, he did not own property in Vermont. Under Vermont's long-arm 12 V.S.A. § 913(b), Vermont has jurisdiction over individuals located out of state to the full extent permitted by the due process clause. *Dall v. Kaylor*, 163 Vt. 274, 276 (1995). Under the due process clause, a state may assert jurisdiction over an out-of-state defendant to the extent that the defendant has had minimum contacts with the state and that assertion of jurisdiction does not offend "traditional notions of fair play and substantial justice." Id. (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In this case, Defendant's action meet this minimum contact test in the following ways. Defendant reached out to Plaintiffs who he knew to be Vermont residents. He accepted money from their Vermont-based banks. He contracted with them in written documents that

acknowledged their Vermont residence and principal place of business. Most importantly, both operating agreements indicate that the forum for any disputes would be in Vermont. Based on these factors, the Court finds that Defendant Phillips purposefully made contact with businesses and individuals in Vermont, and it would be consistent with fair play and substantial justice for this Court to assert jurisdiction over the dispute as the Plaintiffs remain Vermont residents and businesses and are entitled to seek relief from the courts of the state. For these reasons, the Court finds as an initial question that it has sufficient jurisdiction under 12 V.S.A. § 913 to move forward with this matter and render a decision on the pending default judgment motion.

Plaintiffs' claims are effectively two types. First, there are the claims for unpaid labor and capital associated with the two LLCs and the Martha's Vineyard properties, the Mullen lot and the Greenleaf lots. From these claims, the evidence shows that Plaintiffs are entitled to $638,000 in either capital or labor invested into these projects that was not repaid, despite the sale of the property. Second, there is a claim for an unpaid invoice in the amount of $104,589.75 for work performed on a property owned by Phillips on Martha's Vineyard that was outside the partnership agreement and appears to have been strictly a work-for-pay relationship.

The evidence for the first set of claims is that Plaintiffs gave Phillips substantial capital investments in exchange for part ownership of an LLC and a promise to be repaid in the first priority. In both cases, there is sufficient evidence that Plaintiffs paid $300,000 and $168,000, to capitalize each LLC, and the agreements plainly speak about joint ownership and control and a priority of repayment. In the case of the Mullen lot, there is evidence that Plaintiffs provided $170,000 in labor and materials to improve the lot, which sold for a substantial amount of money, $2,600,000.

Defendant Phillips breach his duty to Plaintiffs when he sold the properties without their prior knowledge or authorization, and he further breached his promise to pay them when he retained or paid others without paying Plaintiffs.[1] Following these sales, Phillips continued to promise Plaintiffs that he would pay them from future funds. These included promises to sell them a Martha's Vineyard lot and requests that they not take legal action against him.

The issue here is that Plaintiffs knew that Phillips had breached the operating agreement in 2017 and 2018 when he transferred the properties to third parties and did not fulfill his obligations under the parties' operating agreements. This cause of action grew more apparent over the next few years when no

---

[1] The Court finds that this second breach of the parties operating agreements, promising to repay their investments, first out of the proceeds was the key breach that gave rise to the present set of claims.

further payments followed from Phillips.  If Plaintiffs had brought the present action as simply a breach of contract claim, their claims would be barred by the statute of limitations, which gives parties six years from the time of breach to bring a claim.  12 V.S.A. § 511; *Economou v. Economou*, 133 Vt. 418, 420 (1975) (noting that a court may take judicial notice of the statute of limitations).  Even if the Court were to credit some delay to the discovery of the breach, the Court would be hard pressed to conclude that the discovery of the breach extended more than a year after the closing, which would put the statute of limitations in early 2025, right around the time Plaintiffs filed the present lawsuit.  As noted by the Vermont Supreme Court in *Jadallah*, a party is on inquiry notice once they had sufficient facts to have led a reasonable person to begin to investigate the matter and lead to the cause of action.  *Jadallah v. Town of Fairfax*, 2018 VT 34, ¶¶ 17, 18 (party is on inquiry notice once he becomes aware that a deed involved in s a dispute had been recorded).

Whether Plaintiffs were on reasonable inquiry notice prior to early 2019, or whether the notice period became effective after March 9, 2019 is a disputed question.  For the purposes of the present decision, however, the survival of Plaintiffs' claims does not rest on this point.  Instead, the Court finds that Defendant Phillips actions constituted promissory estoppel.  As explained in the Court in *Tour Costa Rica*, promissory estoppel is:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

*Tour Costa Rica v. Country Walkers, Inc.*, 171 Vt. 116, 120 (2000) (quoting *Foote v. Simmonds Precision Prods. Co.*, 158 Vt. 566, 573 (1992)).

In this case, Defendant Phillips made repeated and multiple promises to Plaintiffs with one goal, to get them to forbear from asserting their rights.  In each case, Defendant would take actions consistent with acknowledging the debt and some action consistent with repayment.  Each time, Plaintiffs would agree to abide by the new terms, to their detriment, and each time, the promised action fell through, leaving Plaintiffs further from the point of the transaction without any progress.  In looking at the totality of the circumstances, Phillips' repeated promises and requests that Plaintiffs forbear from pursuing him legally allowed him to escape any judgment or attachment of his property to the detriment of Plaintiffs' ability to collect and ultimately to their ability to seek payment of their claims.  *Tour Costa Rica*, 171 Vt. at 120–21 (court must look at the totality of the circumstances to determine if plaintiffs reasonably relied on defendant's promise to their detriment).

This brings us to enforcement of Defendant's promise to pay the $638,000 that Defendant has consistently admitted was due and owning on the MVKP and Greenleaf LLC projects. Under the *Tour Costa Rica*, the enforcement of a promise is proper when injustice can only be avoided by the enforcement of the promise. To make this determination, the Court must look to (1) the availability and adequacy of other remedies; (2) definite and substantial character of the forbearance in relation to the remedy; (3) the extent that clear and convincing evidence establishes the terms of the forbearance; (4) the reasonableness of the forbearance; and (5) the extent to the forbearance was foreseeable by the promisor. Id. at 123 (quoting Restatement (Second) of Contracts § 139(2) (1981).

Looking at the first factor, the Court finds that there are no other effective remedies apart from enforcement of Defendant's promise. The statute of limitations has likely run on most, if not all, of Plaintiffs' claims. The second and third factors are also well established by the evidence. Plaintiffs did not pursue their rights under the operating agreements based on Defendant Phillips' promise to pay them either directly or through the transfer of real estate. These promises continued through 2025 and they consistently embodied the principal that if Plaintiffs did nothing today, Defendant would pay them tomorrow.

The Court also finds Plaintiffs' actions to be reasonable. Id. at 123. Plaintiffs had dealt with Phillips for a number of years prior to the transactions. He was a developer with real estate holdings, and the business plans were plausible. When he did not make the initial payments, he provided Plaintiffs with credible excuses, and Plaintiffs were left in a conundrum. Do they press litigation against a business partner with its costs and risks, or do they continue to work with Defendant, who, apart from the non-payment, appeared be a credible partner. Plaintiffs' decision was reasonable. As well, the forbearance was entirely predictable under the circumstances. Defendant Phillips promises revolved around continuing business and promise of more work and more opportunities. Given that Plaintiffs were already over a half-a-million dollars into Defendant's projects, additional investments were not unreasonable and would lead them away from any litigation or enforcement actions on their original promises.

For these reasons, the Court finds that injustice can only be avoided by enforcement of Defendant Phillips' promises to repay the $638,000 amounts that he has acknowledged and for which he has sought to delay enforcement.

The Court further concludes that the $638,000 damage amount is the proper amount and measure of damages in this case as it represents the acknowledged amount due and owning, does not speculate on what profit may or may not have been realized, and it repays amounts actually paid to Defendant or given

to him in terms of materials and labor. For these reasons, the Court grants judgment based on promissory estoppel in favor of Plaintiffs and awards them a judgment of $638,000.

Turning to the $104,589.75 that Plaintiffs have claimed based on the 2017 invoice. The Court finds that there is no evidence of this amount being included in the forbearance promises or in the amounts stated in the various discussions with Defendant Phillips. It was not part of the LLC agreements, and it appears to be a separate invoice for work done on a property owned entirely by Defendant for which Plaintiffs were hired to do work. Their failure to pursue this claim does not appear by clear and convincing evidence to have been part of a forbearance in exchange for a later payment. This is simply a debt that falls outside the statute of limitation. 12 V.S.A. § 511. As such, it cannot be enforced, and the Court finds no basis to award these amounts to Plaintiffs.

## ORDER

It is ORDERED, ADJUDGED, and DECREED that: Plaintiffs Brendan O'Reilly and South Peak Properties, LLC shall have judgment against Defendants Michael Phillips and MVKP, LLC and 12 Greenleaf, LLC on their claim of promissory estoppel and breach of contract. Plaintiffs are awarded $638,000.00 as the evidence establishes was the agreed upon amount acknowledged by Defendant at the amounts owed under the parties' original agreements and were the amounts that Defendant sought to forbear against in his on-going promises to pay in lieu of legal action.

Prejudgment interest at the legal rate shall accrue from the dates of the underlying transfers of property, December 8, 2017 and February 26, 2018, under the terms of the parties' operating agreements. Post-judgment interest shall accrue thereafter as provided by law.

The Court will also grant Plaintiff's request for an accounting. Within 45 days of this Order, Defendants shall produce complete books and records for MVKP, LLC and 12 Greenleaf, LLC from inception through dissolution, including bank statements, general ledgers, closing files for the December 8, 2017 and February 26, 2018 sales, and all distribution records; within 45 days of production, Plaintiffs may file a supplemental statement of additional sums due based on the accounting, and the Court may enter supplemental judgment.

Finally, Plaintiffs are awarded their taxable costs.

DATED at Montpelier, Vermont on November 11, 2025.

Electronically signed on 11/11/2025 8:28 PM pursuant to V.R.E.F. 9(d)

_____  v. MICHAEL PHILLIPS et al

Daniel Richardson
Vermont Superior Court